## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

07 JUN -4 PM 1:47

CHRISTOPHER L. GENTRUP,
STAN COLLIER, TIM FISHER,
AARON JONES, MARK MAUPIN,     :    CASE NO.    **1:07 CV 430**
LYNN RICE, FRED SCHWARTZ
JULIAN STEVENS, III, and DAVID OLIVER,
on behalf of themselves and all others similarly      JUDGE    SPIEGEL, J.
situated

         Plaintiffs,            : COLLECTIVE ACTION COMPLAINT

vs.

RENOVO SERVICES, LLC, RECOVERY ONE
LLC, CYBER ASSET RECOVERY LLC, and
ASCENSION RECOVERY, LLC

         Defendants

Plaintiffs Christopher L. Gentrup, Stan Collier, Tim Fisher, Aaron Jones, Mark Maupin, Lynn Rice, Fred Schwartz, Julian Stevens, III and David Oliver bring this lawsuit against Renovo Services, LLC and its wholly-owned subsidiaries Recovery One, LLC, Cyber Asset Recovery, LLC, and Ascension Recovery, LLC ["Defendants"] seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§201, et seq. In addition to seeking relief on behalf of themselves, Plaintiffs assert their FLSA claim on behalf of similarly-situated workers as a collective action pursuant to 29 U.S.C. §216(b). The following allegations are based upon personal knowledge as to Plaintiffs' own acts and are made on information and belief as to the acts of others.

1

## Jurisdiction and Venue

1. The Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §Section 216(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## Parties

3. Plaintiff Christopher L. Gentrup ("Gentrup") is an individual residing at 41 Harrison, Bellevue, Kentucky.

4. Plaintiff Stan Collier ("Collier") is an individual residing at 1004 Clyde Drive, Nicholasville, Kentucky.

5. Plaintiff Tim Fisher ("Fisher") is an individual residing at 1001 Due West Valley Drive, Madison, Tennessee.

6. Plaintiff Aaron Jones ("Jones") is an individual residing at 426 Thomas Way, Shelbyville, Kentucky.

7. Plaintiff Mark Maupin ("Maupin") is an individual residing at 2519 McClay Garden, St. Peters, Missouri.

8. Plaintiff Lynn Rice ("Rice") is an individual residing at 6220 McCracken Park, Frankfort, Kentucky.

9. Plaintiff Fred Schwartz ("Schwartz") is an individual residing at 7396 Indian Ridge Way, Burlington, Kentucky.

10. Plaintiff Julian Stevens, III ("Stevens") is an individual residing at 489 Hayes Cemetery Road, Greensburg, Kentucky.

11. Plaintiff David Oliver ("Oliver") is an individual residing at 1804 Schribner Avenue,

Columbia, TN 38401.

12. Plaintiffs Plaintiffs Christopher L. Gentrup, Stan Collier, Tim Fisher, Aaron Jones, Mark Maupin, Lynn Rice, Fred Schwartz, Julian Stevens, III and David Oliver are referred to herein collectively as "Plaintiffs."

13. During all relevant times, Plaintiffs were employees entitled to the full protections of the FLSA.

14. Defendant Renovo Services, LLC ("Renovo") is a Delaware corporation headquartered in Chicago, Illinois. Renovo is the parent corporation and sole owner of Defendants Recovery One, LLC, Cyber Assets Recovery, LLC, and Ascension Recovery, LLC. Renovo is engaged in the business of repossessing vehicles for its customers and regularly engages in business within this judicial district.

15. Defendant Recovery One, LLC, a wholly-owned subsidiary of Defendant Renovo, is an Ohio limited liability company headquartered in Lexington, Kentucky, and is engaged in the business of repossessing vehicles for its customers and regularly engages in business within this judicial district.

16. Defendant Cyber Asset Recovery, LLC, a wholly-owned subsidiary of Defendant Renovo, is an Ohio limited liability company headquartered in Toledo, Ohio, and is engaged in the business of repossessing vehicles for its customers and regularly engages in business within this judicial district.

17. Defendant Ascension Recovery, LLC, a wholly-owned subsidiary of Defendant Renovo, is a California limited liability company which is registered as an Ohio foreign liability company, and is engaged in the business of repossessing vehicles for its customers.

18. During all relevant times, Defendants were employers covered by the FLSA.

## Defendant's Common Business Practices

19. Defendants are one of the country's leading providers of repossession services, primarily focusing on the repossession of automobiles, trucks, boats, motorcycles, all-terrain vehicles and recreational vehicles.

20. Defendants operate a nationwide network of repossession agents which include more than 100 agents and 40 recovery lots throughout the United States.

21. In operating their repossession services, Defendants utilize a fleet of company-owned vehicles which employ in-cab global positioning systems to monitor their repossession agents.

22. In operating their repossession services, Defendants employ purported independent contractors, each of whom is required to enter into a standardized contract with Defendants.

23. Defendants' purported independent contractors regularly and consistently drive these vehicles in performing their repossession services on behalf of Defendants. These individuals are referred to herein as the "Class Members."

24. The Class Members' work is integral and indispensable to Defendants' core repossession service. Class Members' responsibilities include, inter alia: receiving web-based repossession orders; repossessing or attempting to repossess vehicles consistent with Defendants' customer service guarantees and warranties; following Defendants' specific work rules and regulations; maintaining a professional and courteous manner in accordance with Defendants' standardized rules of conduct; following detailed and standardized company operating procedures that apply to virtually every aspect of the Class Members' employment; and maintaining the vehicles in accordance with Defendants' detailed and company-wide standards

4

and specifications.

25. As a mater of economic reality, Class Members are economically dependent on Defendants for their livelihoods and exercise virtually no independent control over their employment.

26. Pursuant to Defendants' common business practices, Defendants closely direct and control Class Members' day-to-day activities and virtually all aspects of their employment.

27. Pursuant to Defendants' common business practices, Defendants do not require Class Members to make a significant personal investment relative to the investment by Defendants.

28. Pursuant to Defendants' common business practices, Class Members' opportunity for profit or loss is determined almost entirely by Defendants, and Class Members have virtually no control over the factors determining their level of profit or loss.

29. Pursuant to Defendants' common business practices, Defendants do not require Class Members to possess, obtain or demonstrate specialized skills that are developed independently on the job. Nor do Defendants require Class Members to possess, obtain or demonstrate levels of initiative beyond those required of general members of the workforce. For example, pursuant to Defendants' common business practices, Class Members do not have any control over, *inter alia*, the advertising, marketing, pricing or scheduling of the repossession services they provide.

30. Pursuant to Defendants' common business practices, Class Members generally are employed on a permanent, full-time basis and as a matter of economic reality, they are not able to perform work for other repossession companies.

31. Pursuant to Defendants' common business practices, Class Members regularly work over forty hours per workweek without receiving the time-and-one-half overtime premium

required by the FLSA. With respect to every Class Member, Defendants justify its non-payment of the overtime premium on grounds that Class Members are independent contractors – rather than employees – and, therefore, are not covered by the FLSA's protections.

### Facts Pertaining to Gentrup

32. Gentrup was employed by Defendants during the period June 25, 2003 to September 2, 2006, repossessing vehicles.

33. At the commencement of his employment, Gentrup signed Defendants' standardized employment contract and truck agreement.

34. Gentrup performed the duties generally described in paragraphs 23 to 31.

35. As a matter of economic reality, Gentrup was economically dependent upon Defendants for his livelihood and exercised virtually no independent control over his employment.

36. Defendants closely directed and controlled Gentrup's day-to-day activities and virtually all aspects of his employment.

37. Defendants did not require Gentrup to make a significant personal investment relative to the investment by Defendants.

38. Gentrup's opportunity for profit or loss was determined almost entirely by Defendants and Gentrup had virtually no control over the factors determining his level of profit or loss.

39. Defendants did not require Gentrup to possess, obtain or demonstrate – and Gentrup did not possess, obtain or demonstrate – specialized skills developed independently of the job.

40. Defendants did not require Gentrup to possess, obtain or demonstrate – and Gentrup

6

did not possess, obtain or demonstrate – levels of initiative beyond those required of general members of the workforce. Gentrup did not, for example have any control over or input into, *inter alia*, the advertising, marketing, pricing or scheduling of the repossession services that he provided for Defendants.

41. Gentrup was employed on a permanent, full-time basis and, as a matter of economic reality, was not able to perform work for other repossession companies.

42. Gentrup regularly worked over forty hours per workweek without receiving the time-and-one-half overtime premium required by the FLSA. Defendants justify its non-payment of the overtime premium on grounds that Gentrup was an independent contractor and, therefore, not covered by the FLSA's protections. In fact, however, Gentrup was not an independent contractor for purposes of the FLSA.

### Facts Pertaining to Collier

43. Collier was employed by Defendants for approximately three years until he left his employment in approximately late 2005, repossessing vehicles.

44. At the commencement of his employment, Collier signed Defendants' standardized employment contract and truck agreement.

45. Collier performed the duties generally described in paragraphs 23 to 31.

46. As a matter of economic reality, Collier was economically dependent upon Defendants for his livelihood and exercised virtually no independent control over his employment.

47. Defendants closely directed and controlled Collier's day-to-day activities and virtually all aspects of his employment.

7

48. Defendants did not require Collier to make a significant personal investment relative to the investment by Defendants.

49. Collier's opportunity for profit or loss was determined almost entirely by Defendants and Collier had virtually no control over the factors determining his level of profit or loss.

50. Defendants did not require Collier to possess, obtain or demonstrate – and Collier did not possess, obtain or demonstrate – specialized skills developed independently of the job.

51. Defendants did not require Collier to possess, obtain or demonstrate – and Collier did not possess, obtain or demonstrate – levels of initiative beyond those required of general members of the workforce. Collier did not, for example have any control over or input into, *inter alia*, the advertising, marketing, pricing or scheduling of the repossession services that he provided for Defendants.

52. Collier was employed on a permanent, full-time basis and, as a matter of economic reality, was not able to perform work for other repossession companies.

53. Collier regularly worked over forty hours per workweek without receiving the time-and-one-half overtime premium required by the FLSA. Defendants justify its non-payment of the overtime premium on grounds that Collier was an independent contractor and, therefore, not covered by the FLSA's protections. In fact, however, Collier was not an independent contractor for purposes of the FLSA.

## Facts Pertaining to Fisher

54. Fisher was employed by Defendants during the period May 10, 2006 to January 8, 2007, repossessing vehicles.

55. At the commencement of his employment, Fisher signed Defendants' standardized

8

employment contract and truck agreement.

56. Fisher performed the duties generally described in paragraphs 23 to 31.

57. As a matter of economic reality, Fisher was economically dependent upon Defendants for his livelihood and exercised virtually no independent control over his employment.

58. Defendants closely directed and controlled Fisher's day-to-day activities and virtually all aspects of his employment.

59. Defendants did not require Fisher to make a significant personal investment relative to the investment by Defendants.

60. Fisher's opportunity for profit or loss was determined almost entirely by Defendants and Fisher had virtually no control over the factors determining his level of profit or loss.

61. Defendants did not require Fisher to possess, obtain or demonstrate – and Fisher did not possess, obtain or demonstrate – specialized skills developed independently of the job.

62. Defendants did not require Fisher to possess, obtain or demonstrate – and Fisher did not possess, obtain or demonstrate – levels of initiative beyond those required of general members of the workforce. Fisher did not, for example have any control over or input into, *inter alia*, the advertising, marketing, pricing or scheduling of the repossession services that he provided for Defendants.

63. Fisher was employed on a permanent, full-time basis and, as a matter of economic reality, was not able to perform work for other repossession companies.

64. Fisher regularly worked over forty hours per workweek without receiving the time-and-one-half overtime premium required by the FLSA. Defendants justify its non-payment of the

9

overtime premium on grounds that Fisher was an independent contractor and, therefore, not covered by the FLSA's protections. In fact, however, Fisher was not an independent contractor for purposes of the FLSA.

### Facts Pertaining to Jones

65. Jones was employed by Defendants during the period 2000 to approximately February 25, 2007, repossessing vehicles.

66. At the commencement of his employment, Jones signed Defendants' standardized employment contract and truck agreement.

67. Jones performed the duties generally described in paragraphs 23 to 31.

68. As a matter of economic reality, Jones was economically dependent upon Defendants for his livelihood and exercised virtually no independent control over his employment.

69. Defendants closely directed and controlled Jones's day-to-day activities and virtually all aspects of his employment.

70. Defendants did not require Jones to make a significant personal investment relative to the investment by Defendants.

71. Jones's opportunity for profit or loss was determined almost entirely by Defendants and Jones had virtually no control over the factors determining his level of profit or loss.

72. Defendants did not require Jones to possess, obtain or demonstrate – and Jones did not possess, obtain or demonstrate – specialized skills developed independently of the job.

73. Defendants did not require Jones to possess, obtain or demonstrate – and Jones did not possess, obtain or demonstrate – levels of initiative beyond those required of general members of the workforce. Jones did not, for example have any control over or input into, *inter*

*alia*, the advertising, marketing, pricing or scheduling of the repossession services that he provided for Defendants.

74. Jones was employed on a permanent, full-time basis and, as a matter of economic reality, was not able to perform work for other repossession companies.

75. Jones regularly worked over forty hours per workweek without receiving the time-and-one-half overtime premium required by the FLSA. Defendants justify its non-payment of the overtime premium on grounds that Jones was an independent contractor and, therefore, not covered by the FLSA's protections. In fact, however, Jones was not an independent contractor for purposes of the FLSA.

## Facts Pertaining to Maupin

76. Maupin was employed by Defendants during the period November 21, 2002 until March 2005, repossessing vehicles.

77. At the commencement of his employment, Maupin signed Defendants' standardized employment contract and truck agreement.

78. Maupin performed the duties generally described in paragraphs 23 to 31.

79. As a matter of economic reality, Maupin was economically dependent upon Defendants for his livelihood and exercised virtually no independent control over his employment.

80. Defendants closely directed and controlled Maupin's day-to-day activities and virtually all aspects of his employment.

81. Defendants did not require Maupin to make a significant personal investment relative to the investment by Defendants.

82. Maupin's opportunity for profit or loss was determined almost entirely by Defendants and Maupin had virtually no control over the factors determining his level of profit or loss.

83. Defendants did not require Maupin to possess, obtain or demonstrate – and Maupin did not possess, obtain or demonstrate – specialized skills developed independently of the job.

84. Defendants did not require Maupin to possess, obtain or demonstrate – and Maupin did not possess, obtain or demonstrate – levels of initiative beyond those required of general members of the workforce. Maupin did not, for example have any control over or input into, *inter alia*, the advertising, marketing, pricing or scheduling of the repossession services that he provided for Defendants.

85. Maupin was employed on a permanent, full-time basis and, as a matter of economic reality, was not able to perform work for other repossession companies.

86. Maupin regularly worked over forty hours per workweek without receiving the time-and-one-half overtime premium required by the FLSA. Defendants justify its non-payment of the overtime premium on grounds that Maupin was an independent contractor and, therefore, not covered by the FLSA's protections. In fact, however, Maupin was not an independent contractor for purposes of the FLSA.

## Facts Pertaining to Rice

87. Rice was employed by Defendants during the period from approximately January 15, 2003 to January 15, 2006, repossessing vehicles.

88. At the commencement of his employment, Rice signed Defendants' standardized employment contract and truck agreement.

89. Rice performed the duties generally described in paragraphs 23 to 31.

90. As a matter of economic reality, Rice was economically dependent upon Defendants for his livelihood and exercised virtually no independent control over his employment.

91. Defendants closely directed and controlled Rice's day-to-day activities and virtually all aspects of his employment.

92. Defendants did not require Rice to make a significant personal investment relative to the investment by Defendants.

93. Rice's opportunity for profit or loss was determined almost entirely by Defendants and Rice had virtually no control over the factors determining his level of profit or loss.

94. Defendants did not require Rice to possess, obtain or demonstrate – and Rice did not possess, obtain or demonstrate – specialized skills developed independently of the job.

95. Defendants did not require Rice to possess, obtain or demonstrate – and Rice did not possess, obtain or demonstrate – levels of initiative beyond those required of general members of the workforce. Rice did not, for example have any control over or input into, *inter alia*, the advertising, marketing, pricing or scheduling of the repossession services that he provided for Defendants.

96. Rice was employed on a permanent, full-time basis and, as a matter of economic reality, was not able to perform work for other repossession companies.

97. Rice regularly worked over forty hours per workweek without receiving the time-and-one-half overtime premium required by the FLSA. Defendants justify its non-payment of the overtime premium on grounds that Rice was an independent contractor and, therefore, not covered by the FLSA's protections. In fact, however, Rice was not an independent contractor for purposes of the FLSA.

## Facts Pertaining to Schwartz

98. Schwartz was employed by Defendants during the period October 2004 to January 7, 2007, repossessing vehicles.

99. At the commencement of his employment, Schwartz signed Defendants' standardized employment contract and truck agreement.

100. Schwartz performed the duties generally described in paragraphs 23 to 31.

101. As a matter of economic reality, Schwartz was economically dependent upon Defendants for his livelihood and exercised virtually no independent control over his employment.

102. Defendants have closely directed and controlled Schwartz's day-to-day activities and virtually all aspects of his employment.

103. Defendants did not require Schwartz to make a significant personal investment relative to the investment by Defendants.

104. Schwartz's opportunity for profit or loss was determined almost entirely by Defendants and Schwartz had virtually no control over the factors determining his level of profit or loss.

105. Defendants did not require Schwartz to possess, obtain or demonstrate – and Schwartz did not possess, obtain or demonstrate – specialized skills developed independently of the job.

106. Defendants did not require Schwartz to possess, obtain or demonstrate – and Schwartz did not possess, obtain or demonstrate – levels of initiative beyond those required of general members of the workforce. Schwartz did not, for example have any control over or input

14

into, *inter alia,* the advertising, marketing, pricing or scheduling of the repossession services that he provided for Defendants.

107. Schwartz was employed on a permanent, full-time basis and, as a matter of economic reality, was not able to perform work for other repossession companies.

108. Schwartz regularly worked over forty hours per workweek without receiving the time-and-one-half overtime premium required by the FLSA. Defendants justify its non-payment of the overtime premium on grounds that Schwartz was an independent contractor and, therefore, not covered by the FLSA's protections. In fact, however, Schwartz was not an independent contractor for purposes of the FLSA.

## Facts Pertaining to Stevens

109. Stevens was employed by Defendants during the period December 4, 2003 to May 2006 and from January 2007 to late February 2007, repossessing vehicles.

110. At the commencement of his employment, Stevens signed Defendants' standardized employment contract and truck agreement.

111. Stevens performed the duties generally described in paragraphs 23 to 31.

112. As a matter of economic reality, Stevens was economically dependent upon Defendants for his livelihood and exercised virtually no independent control over his employment.

113. Defendants closely directed and controlled Stevens's day-to-day activities and virtually all aspects of his employment.

114. Defendants did not require Stevens to make a significant personal investment relative to the investment by Defendants.

15

115. Stevens's opportunity for profit or loss was determined almost entirely by Defendants and Stevens had virtually no control over the factors determining his level of profit or loss.

116. Defendants did not require Stevens to possess, obtain or demonstrate – and Stevens did not possess, obtain or demonstrate – specialized skills developed independently of the job.

117. Defendants did not require Stevens to possess, obtain or demonstrate – and Stevens did not possess, obtain or demonstrate – levels of initiative beyond those required of general members of the workforce. Stevens did not, for example have any control over or input into, *inter alia*, the advertising, marketing, pricing or scheduling of the repossession services that he provided for Defendants.

118. Stevens was employed on a permanent, full-time basis and, as a matter of economic reality, was not able to perform work for other repossession companies.

119. Stevens regularly worked over forty hours per workweek without receiving the time-and-one-half overtime premium required by the FLSA. Defendants justify its non-payment of the overtime premium on grounds that Stevens was an independent contractor and, therefore, not covered by the FLSA's protections. In fact, however, Stevens was not an independent contractor for purposes of the FLSA.

### **Facts Pertaining to Oliver**

120. Oliver was employed by Defendants during the period May 2005 to May 2006 and from February 2007 to May 31, 2007, repossessing vehicles.

121. At the commencement of his employment, Oliver signed Defendants' standardized employment contract and truck agreement.

122. Oliver performed the duties generally described in paragraphs 23 to 31.

123. As a matter of economic reality, Oliver was economically dependent upon Defendants for his livelihood and exercised virtually no independent control over his employment.

124. Defendants closely directed and controlled Oliver's day-to-day activities and virtually all aspects of his employment.

125. Defendants did not require Oliver to make a significant personal investment relative to the investment by Defendants.

126. Oliver's opportunity for profit or loss was determined almost entirely by Defendants and Oliver had virtually no control over the factors determining his level of profit or loss.

127. Defendants did not require Oliver to possess, obtain or demonstrate – and Oliver did not possess, obtain or demonstrate – specialized skills developed independently of the job.

128. Defendants did not require Oliver to possess, obtain or demonstrate – and Oliver did not possess, obtain or demonstrate – levels of initiative beyond those required of general members of the workforce. Oliver did not, for example have any control over or input into, *inter alia*, the advertising, marketing, pricing or scheduling of the repossession services that he provided for Defendants.

129. Oliver was employed on a permanent, full-time basis and, as a matter of economic reality, was not able to perform work for other repossession companies.

130. Oliver regularly worked over forty hours per workweek without receiving the time-and-one-half overtime premium required by the FLSA. Defendants justify its non-payment of the overtime premium on grounds that Oliver was an independent contractor and, therefore, not

covered by the FLSA's protections. In fact, however, Oliver was not an independent contractor for purposes of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

131. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. §216(b) as a nationwide collective action on behalf of all persons who, during any time since June 2004 worked in the United States for Defendants as purported independent contractors and in that capacity regularly drove company-owned trucks.

132. Plaintiffs and the above-defined class of workers are similarly situated, as that term is defined in 29 U.S.C. §216(b) because, *inter alia*, Class Members worked pursuant to Defendants' previously-described common business practice; and as a result of such practices, were not paid the legally-mandated overtime premium due to Defendants' misclassification of them as independent contractors.

## COUNT ONE

133. All previous paragraphs are incorporated as if fully set forth herein.

134. The FLSA requires covered employees to be compensated for every hour worked in the workweek. *See* U.S.C. §206(b).

135. The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in the workweek. *See* U.S.C. §207(a)(1).

136. Plaintiffs and the class are covered employees entitled to the FLSA's protections.

137. Defendants are covered employers required to comply with the FLSA.

138. Defendants have violated the FLSA with respect to Plaintiffs and the class by, *inter*

*alia*, failing to pay Plaintiffs and the class the legally-mandated overtime premium for hours worked over 40 in a workweek.

139. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek the following relief based on themselves and all others similarly situated:

A. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. §216(b).

B. Prompt notice pursuant to 29 U.S.C. §216(b) of this litigation to all potential class members.

C. A judgment declaring Defendants' classification of Plaintiffs and other Class Members as independent contractors to be unlawful;

D. An injunction prohibiting Defendants from engaging in future violations of the FLSA;

E. Monetary damages to the fullest extent permitted under federal law;

F. Liquidated damages to the fullest extent permitted under federal law;

G. Liquidated costs, expenses and attorneys' fees to the fullest extent permitted under federal law; and

H. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*[signature]*

Bruce H. Meizlish #0035361

*[signature]*

Deborah R. Grayson #0062777
MEIZLISH & GRAYSON
Attorneys for Plaintiffs
830 Main Street, Suite 999
Cincinnati, Ohio 45202
(513) 345-4700
Fax (513) 345-4703