# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GENTRUP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:07 CV 430 |
| | ) | Judge Spiegel |
| vs. | ) | Magistrate Judge Timothy S. Black |
| | ) | |
| RENOVO SERVICES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Craig R. Annunziata
Joel W. Rice (Ohio Bar No. 0033630)
FISHER & PHILLIPS LLP
140 South Dearborn Street, Suite 1000
Chicago, IL 60603
(312) 346-8061

Attorneys for Defendants

Chicago 87794.1

I.  **INTRODUCTION**

This lawsuit seeking payment of alleged overtime under the Fair Labor Standards Act ("FLSA") is brought against Defendants (collectively "Defendants" or "Renovo") by a small group of former repossession agents.[1]  Repossession agents operate trucks out in the field repossessing all manner of vehicles for Renovo's lender clients.  Plaintiffs' motion for conditional class certification rests upon five substantially duplicative affidavits/declarations. Much of Plaintiffs' motion and the supporting material is devoted to the underlying substantive issue of whether they are de facto employees, as opposed to independent contractors.  To the extent resolution of such issue is germane to the Court's determination of whether a class should be conditionally certified, the "preliminary evidence," as Plaintiffs put it, overwhelmingly supports the conclusion that no class should be conditionally certified. The only court or agency to squarely address the independent contractor/employee status of repossession agents is the IRS, which concluded that repossession drivers much like these were independent contractors for purposes of the federal tax laws.

Indeed, it would be anomalous and unprecedented to conclude that Plaintiffs are employees, rather than independent contractors, given the numerous objective indicia of their independent contractor status, including (a) their agreement expressing the parties' intent that the agents serve as independent contractors; (b) Plaintiffs' responsibility for payment of their own taxes, insurance and other benefits; (c) the fact that Plaintiffs perform their services in unmarked trucks out in the field without any requirement that they report to the company's premises or wear any company uniform or insignia; (d) Plaintiffs' latitude to reject an assignment and their discretion concerning the day-to-day performance of their assignments (e) Plaintiffs' ability to hire their own employees, for whom they are

---

[1]  There are nine (9) named Plaintiffs in the Amended Complaint.  In addition, three individuals—Chad Whitmer, Jimmy Yarbrough and Johnny Clarke—have inappropriately filed "opt-in" notices before any determination by this Court of the appropriateness of class treatment of this case.  In the event this Court denies Plaintiffs' motion for conditional certification, the "opt-in" Plaintiffs should be stricken from this lawsuit.

financially responsible; and (f) the numerous other expenses borne by Plaintiffs including the cost of leasing and/or ownership of the vehicle used to perform the repossessions, cell phone, laptop computer, licenses, bonds, permits, and personal expenses on the road, such as meals, tolls, etc. Accordingly, for this threshold reason alone, the Court should not expand the scope of this case.

As demonstrated below, and wholly apart from the lack of merit to the underlying claims, Plaintiffs have not satisfied their burden of showing they are similarly-situated with the putative class of repossession agents (hereinafter "agents" or "drivers") they purport to represent. Conditional certification should be denied for each of the following additional reasons:

- Plaintiffs concede that under the governing "economic realities" test the determination of whether one is an independent contractor or employee for purposes of the FLSA is highly fact specific and to be resolved on a "case-by-case" basis. Plaintiffs' Memorandum of Law ("Pl. Mem."), p. 11. The individualized factual inquiry required for resolution of the issue at the heart of this case strongly militates against class treatment of Plaintiffs' overtime claims.

- Plaintiffs' own evidence shows that over the applicable time period there have been numerous changes to how agents are paid, how orders are received, and even changes to the provisions of their contracts. Moreover, the three Renovo subsidiaries named as Defendants in this case—Recovery One, Cyber Asset and Ascension—were not acquired until late 2005 and early 2006. Before that, the three companies had different ownership and different operating procedures. Moreover, as former agents, Plaintiffs' interests are not necessarily aligned with those of current drivers.

- Plaintiffs are all former Recovery One, LLC ("Recovery One") agents concentrated in Kentucky. Recovery One is just one Renovo subsidiary operating in specific states in one region of the country. Plaintiffs' evidence of practices at the other subsidiaries, Cyber Asset Recovery, LLC ("Cyber Asset") and Ascension Recovery, LLC ("Ascension"), which operate in entirely different geographic regions, is practically non-existent. Plaintiffs have not tendered a single supporting affidavit from a Cyber Asset or Ascension driver. Moreover, the e-mails and other communications on which they rely all emanate from Recovery One Regional Manager, Robert Howard, or, ironically, from "opt-in" Plaintiff Chad Whitmer during his brief and failed stint as a Field Agent Supervisor ("FAS") for Recovery One.

In sum, Plaintiffs seek to impose an undue and unwarranted burden on Defendants to facilitate notice to dozens, if not hundreds, of drivers in different regions of the country for the past three years. This Court should reject such unwarranted expansion of the case. See Freeman v. Wal-Mart Stores, Inc., 256 F.

2

Supp. 2d 941, 944 (W.D. Ark. 2003) (courts have "a 'responsibility to avoid the "stirring up" of litigation through unwarranted solicitation'" under the guise of an FLSA Section 216(b) notice) (internal citation omitted). Alternatively, and at a bare minimum, if any notice issues at all, it should be limited to the Kentucky region where Plaintiffs predominantly performed their services, or to the Recovery One subsidiary only.

## II.    FACTUAL BACKGROUND

### A.    Background On Defendants' Structure And Operations, And Changes To Defendants' Operations Over Time.

Renovo is a limited liability company headquartered in Chicago, Illinois.  Through various subsidiaries, including the three additional companies named in this lawsuit, it provides repossession services in the Midwest, Southeast and parts of the Southwest regions of the United States. Def. Answer to Am. Complt., ¶¶ 14, 19; Declaration of David Cowlbeck ("Cowlbeck Decl."), ¶¶ 3 and 4.[2]  Renovo provides repossession services for lenders in connection with automobiles, trucks, boats, motorcycles, all-terrain and recreational vehicles. Cowlbeck Decl., ¶ 3.

Each of the Renovo subsidiaries named in this lawsuit operates in a distinct geographic area. Pl. Mem., p. 2; Cowlbeck Decl., ¶ 4.  For example, Cyber Asset provides services in Illinois, Indiana, Iowa, Michigan and Ohio. Id.  Ascension, on the other hand, operates in Alabama, Georgia, and South Carolina. Id.  Recovery One's territory is focused in the mid-South, including Arkansas, Delaware, Kentucky, Maryland, North Carolina, Tennessee, Virginia and West Virginia. Id.  Furthermore, each Renovo subsidiary is presided over by a different Regional Manager.  Robert Howard is the Regional Manager for Recovery One; Jack Hunter is the Regional Manager for Cyber Asset; and Russell Keith is Regional Manager for Ascension. Id.

---

[2]  The supporting Declarations of David Cowlbeck and Robert Howard are attached hereto as Exhibits A and B.

Renovo only recently acquired the subsidiaries named in this lawsuit. Specifically, Renovo purchased the outstanding units of limited liability companies Recovery One and Cyber Asset on September 26, 2005 and March 7, 2006, respectively. Renovo purchased the assets of Ascension, an existing S-Corporation, on January 3, 2006. Cowlbeck Decl., ¶ 3. Previously, Renovo subsidiaries were under different ownership and not part of an integrated national network. Although the agents have been consistently classified as independent contractors, there have been changes to Defendants' operations over the relevant time period, many of which are traceable to the change in ownership. For example, the agents were previously paid a percentage of the amount received for each recovery, whereas now they are paid a flat fee per repossession. Jones Decl., ¶ 5; Gentrup Aff., ¶ 8; Yarbrough Decl., ¶ 6; Schwartz Decl., ¶ 7.[3] In addition, the agents' compensation was more individualized under the prior ownership. Declaration of Robert Howard ("Howard Decl."), ¶ 3. The manner in which agents receive assignments has also changed. Assignments were previously communicated by phone or facsimile. Later during the relevant time period, Defendants began utilizing the Recovery Database Network ("RDN"), which transmits assignments electronically to the agent's computer. Cowlbeck Decl., ¶ 8; Gentrup Aff., ¶ 15; Schwartz Decl., ¶ 10; Yarbrough Decl., ¶ 8.[4] Furthermore, there have been several iterations of the Independent Contractor Agreement ("Agreement") over the relevant time period. Howard Decl., ¶ 3; Gentrup Aff., ¶ 17.

Defendants' organizational structure has also changed in certain respects over the past few years. For example, in the summer of 2006, Renovo instituted the Field Agent Supervisor ("FAS") position. The FAS was intended to be the front-line person interacting with the agents in the field, offering

---

[3] Plaintiffs tendered affidavits by Christopher Gentrup and Chad Whitmer, and declarations by Jimmy Yarbrough, Aaron Jones, and Fred Schwartz, in support of their motion for conditional class certification. Their supporting materials will be referred to herein by the last name of the affiant followed by "Aff." or "Decl." and the appropriate paragraph number.

[4] The GPS device mentioned in several of Plaintiffs' affidavits/declarations was not installed in company-owned vehicles until November 2006. Yarbrough Aff., ¶ 12; Howard Decl., ¶ 3. Several of the Plaintiffs were no longer even affiliated with Recovery One when the GPS device was first installed.

support and assistance. Cowlbeck Decl., ¶ 5.  By the spring of 2007, several months later, Renovo discontinued the FAS position. Cowlbeck Decl., ¶ 5.  One of the "opt-in" Plaintiffs, Chad Whitmer, briefly held an FAS position from the end of November 2006 until May 1, 2007. Whitmer Aff., ¶ 3.  In addition, the Customer Service Representatives ("CSR"), who serve as the liaison between the agents in the field and the customers, formerly were located in the various regional offices.  As of June 4, 2007, however, the CSRs were all consolidated at Renovo's Grand Rapids, Michigan office, where the COO is located. Cowlbeck Decl., ¶ 6.

**B.      Background On Plaintiffs, Including Objective Indicia Of Their Independent Contractor Status**

All repossession agents, including Plaintiffs, perform services for Renovo and/or its subsidiaries pursuant to an Independent Recovery Contractor Agreement ("Agreement") that specifically identifies them as an independent contractor, not an employee. Cowlbeck Decl., ¶ 7, Exh. A thereto, ¶¶ 1, 15.  In addition to designating the agent as an independent contractor, the Agreement states that the agent will receive a Form 1099 for all work performed, and will be responsible for all taxes. Cowlbeck Decl., Exh. A thereto, ¶ 15.  The Agreement makes clear that the agent is not guaranteed a minimum number of assignments. Id., ¶ 2.  Nor is the agent guaranteed any compensation by the company.  Rather, the agent is compensated solely on the basis of completed assignments according to a fee schedule, which varies depending upon whether the repossession was voluntary or involuntary. Id., ¶ 6.  The Agreement also makes clear that the agent is responsible for obtaining applicable insurance, licenses, approvals and bonds. Id., ¶¶ 5, 12.  Moreover, the Agreement refers to the agent's responsibility for training his employees, and for providing medical insurance for his employees, at the agent's sole cost. Id., ¶¶ 3, 12. Finally, the Agreement does not forbid the agent from performing similar services for other companies so long as they are not existing clients of Renovo, no confidential information is utilized, and, if applicable, a company-owned vehicle is not being utilized to perform such services. Id., ¶¶ 7, 9.

Apart from the Agreement, other evidence firmly establishes Plaintiffs' independent contractor status:

(1)     The agents work out of their homes and in the field.  They are not required to perform services on the company's premises, or report to the company offices. Cowlbeck Decl., ¶ 8.  The prior owners held an annual conference for the agents, but no such conference has taken place since October 2005. Cowlbeck Decl., ¶ 8.  When conferences were held in past years, no attendance was taken and there were no consequences if an agent failed to attend. Howard Decl., ¶ 6.

(2)     The agent is free to accept or decline an assignment.  There is no consequence for refusing a given assignment.  The company simply looks to an alternative resource in the territory in question. Cowlbeck Decl., ¶ 9.

(3)     In the course of working on assignments they choose to accept, the agents set their own schedule and prioritize their workload.  For example, the agent makes his own determination as to which repossession to pursue first and how to go about completing the repossession. Cowlbeck Decl., ¶ 10. Considerable tact, judgment and discretion is required on the part of the agent in dealing with the public as they go about their task of accomplishing the repossession in a peaceable manner. No manager is required to be in the truck with the agent when he is making such judgments. Id., ¶ 11.  From time-to-time, the company may provide the agent with information, but the agent is free to reject such information.  For example, mapping software has recently become available for the agents' use in planning their routes.  However, the agent is not obligated to use such software. Id., ¶ 10.

(4)     As the Agreement reflects, the agents are free to hire their own employees.  The agent is responsible for paying his helpers.  The company is not involved in the agent's hiring decisions.  Indeed, the company is not even notified of such hires unless the agent's employee will be riding in a company vehicle, and then solely because the employee is covered by the insurance carried by the company on the

leased trucks.  Cowlbeck Decl., ¶ 12.  The majority of Renovo agents have their own employees who assist them. Id.

(5)     Most agents lease a vehicle from the company.  However, there is no requirement that they do so.  Approximately fifteen to twenty percent (15-20%) of the agents utilize their own vehicles in performing the repossession services. Cowlbeck Decl., ¶ 13; Schwartz Decl., ¶ 4.  Whether they are utilizing a vehicle leased from the company, or they are driving their own vehicle, there is no company name or logo on the vehicle. Cowlbeck Decl., ¶ 13.  Nor do the agents wear a uniform or insignia reflecting affiliation with Renovo or its subsidiaries. Id., ¶ 13.

(6)     The agents pay for other equipment associated with their repossession services, including a cell phone and, since the implementation of the RDN, a laptop computer.  While the company has a program under which it purchases the computer upfront, the agent is obligated to pay for the computer in installments out of his repossession fees. Jones Aff., ¶ 7; Cowlbeck Decl., ¶ 14. Other expenses borne by the agents include their employees' compensation and health insurance, as well as their own taxes, health insurance, licenses, bonds, permits and personal expenses on the road, such as meals, tolls, etc.  If the agent is using his own vehicle, he bears the cost of fuel and maintenance on the vehicle as well. Cowlbeck Decl., ¶ 14.

Plaintiffs are all former agents with Recovery One, just one of the three Renovo subsidiaries named in this lawsuit, and nearly all of the Plaintiffs performed their services in just one state, Kentucky.[5]  They dealt with just one of the Regional Managers, Robert Howard, who is responsible for Recovery One. Howard Decl., ¶¶ 1, 2.  None of the Plaintiffs is currently under contract with any of the Renovo companies.  Moreover, several of the Plaintiffs' affiliation with Recovery One was long ago and, hence, their entire tenure, or nearly their entire tenure, as a Recovery One agent was under the prior

---

[5]  Affiant Chad Whitmer claims to have performed services for a grand total of four weeks with Cyber Asset, but otherwise he was affiliated with Recovery One. Whitmer Aff., ¶ 3.

ownership. Am. Complt., ¶¶ 32, 43, 76, and 87.  Furthermore, all, or nearly all, of the Plaintiffs parted ways with Recovery One under acrimonious circumstances, or were poor performers.  Howard Decl., ¶ 4; Gentrup Aff., ¶ 22; Yarbrough Decl., ¶ 14; Schwartz Decl., ¶ 17; Jones Decl., ¶ 17.  The lead Plaintiff, Gentrup, departed Recovery One voluntarily after it received a garnishment order from the IRS for taxes Gentrup owed as an independent contractor. Howard Decl., ¶ 4.

## III.    ARGUMENT

### A.    Applicable Legal Standards

Plaintiffs seek conditional class certification and Court supervised notice to potential plaintiffs in the putative class. Pl. Mem., p. 5.  Although the Sixth Circuit has not decided the matter, courts have generally adopted a two-tier approach to the question of class certification in cases arising under the FLSA. See Landsberg v. Acton Enterprises, Inc., 2006 U.S. Dist. LEXIS 90716, *6 (S.D. Ohio 2006).[6] Under such approach, the first tier determination consists of whether notice should issue at all to potential "opt-in" plaintiffs. Id. at *7-8.  Plaintiffs have the burden of demonstrating that they are similarly-situated to other employees in the potential class. Id. at **8, 13-14 (denying motion for conditional certification at first-tier stage).  As set forth in Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 868 (S.D. Ohio 2005), courts should confine conditional certification to "appropriate cases." Plaintiffs must present "some evidence" to support their assertion that a class of similarly-situated individuals exists. Id.   In denying plaintiff's motion for conditional class certification in an FLSA overtime case, the court in Harrison observed:  "Before subjecting an employer to the burdens of a collective action, 'plaintiffs must establish a colorable basis for their claim that a class of "similarly-situated" plaintiffs exist.'" Id.

---

[6]  All LEXIS or Westlaw decisions are attached hereto as Group Exhibit C.

8

As demonstrated below, Plaintiffs have not satisfied their burden of showing that they are similarly-situated with all Renovo repossession agents across the country over the time period applicable to their FLSA overtime claims.

**B.     Plaintiffs Have Not Satisfied Their Burden Of Demonstrating That They Are Similarly-Situated With All Repossession Agents In The Putative Class.**

**1.     Individualized Factual Issues Inherent To Plaintiffs' Claims Preclude Certification.**

Plaintiffs concede that the "economic realities" test for determining whether someone is an independent contractor, as opposed to an employee, "is a loose formulation, leaving the determination of employment status to case-by-case resolution based on the totality of the circumstances." Pl. Mem., pp. 11-12.  Indeed, at least one court has found that the fact intensive, highly individualized nature of the independent contractor/employee determination precluded conditional class certification in an FLSA overtime case. Pfaahler v. Consultants for Architects, Inc., 2000 U.S. Dist. LEXIS 1772, *4 (N.D. Ill. 2000) ("the court would be required to make a fact-intensive, individual determination as to the nature of each claimant's employment relationship with CFA. . .  Where this is the case, certification of a collective action under the FLSA is inappropriate").  See also Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (denying motion for conditional class certification where individualized inquiries necessary to determine applicability of overtime exemption would obviate "the economy of scale envisioned by the FLSA collective action procedure"); Reich v. Homier Distrib. Co., 362 F. Supp. 2d 1009, 1013 (N.D. Ind. 2005) (denying motion for conditional class certification where determining applicability of FLSA exemption "will require a highly individualized, fact-specific inquiry"); Levinson v. Primedia, Inc., 2003 U.S. Dist. LEXIS 20010, ** 5-6 (S.D. N.Y. 2003) (motion for issuance of class notice denied where plaintiffs' evidence of their employee status and failure to pay overtime was specific to their individual circumstances); Sheffield v. Orius Corp., 211 F.R.D. 411, 413

(D. Or. 2002) ("[a collective action] dominated by issues particular to individual plaintiffs cannot be administered efficiently").

Here, too, the fact-specific, individualized inquiry required for resolution of the independent contractor/employee classification issue central to this case cuts against Plaintiffs' pursuit of class treatment, even on a conditional basis.  Most of what Plaintiffs rely upon in their affidavits consists of evidence regarding their duties and how they were treated, rather than evidence of a uniform policy or plan applicable to all Renovo subsidiaries.  As demonstrated in Section B(3) below, to the extent Plaintiffs cite evidence of a national or uniform policy, it either has no bearing upon their independent contractor status, or it affirmatively supports such status.

### 2.      Changes to Practices Over Relevant Time Period

Plaintiffs and the putative class of drivers they seek to represent are not similarly-situated due to changes to company practices over time.  At the outset, it should be noted that the named Plaintiffs are all _former_ agents.  There is no indication from their Amended Complaint or from the affidavits they have tendered that any _current_ drivers wish to be reclassified and treated as employees, or that in any sense the current drivers view their interests as aligned such that they would be considered similarly-situated. See Auto Ventures, Inc. v. Moran, 1997 U.S. Dist. LEXIS 7037, * 14 (S.D. Fla. 1997) (court holds in Rule 23 class action that "former franchisees cannot represent present franchisees").  Moreover, several of the named Plaintiffs primarily or exclusively served as agents under the prior owners. Am. Complt., ¶¶ 32, 43, 76 and 87.  Indeed, Ascension and Cyber Asset were not acquired until 2006—well into the applicable time period for Plaintiffs' FLSA claims. Cowlbeck Decl., ¶ 3.  Furthermore, there have been  numerous changes to specific policies and practices over the relevant time period—including changes to pay practices, how assignments are communicated, installation of GPS devices, and changes

to certain provisions of the agents' Agreement. Howard Decl., ¶ 3; Jones Decl., ¶ 5; Gentrup Aff., ¶¶ 8, 15, 17; Yarbrough Decl., ¶¶ 6, 8; Schwartz Decl., ¶¶ 7, 10.

In sum, the foregoing differences in company practices over time confirm that the named Plaintiffs are not similarly-situated with current drivers or drivers who performed services for the various Renovo subsidiaries throughout the applicable time period. See Sheffield, 211 F.R.D. at 413 (fact that defendant acquired small, individual companies over the time period covered by the potential class notice "cuts against plaintiffs' argument that they were victims of a uniform, national policy").

### 3. Plaintiffs' Lack of Admissible Evidence Of A Common Plan to Treat All Agents as Employees

Contrary to Plaintiffs' contention, there is no evidence that they were subjected to a common policy or plan treating them as employees. Pl. Mem., p. 8.

First, the fact that the agents all signed a relatively standardized agreement not only designating them as independent contractors, but indicating that they are free to hire their own employees, are responsible for paying their own taxes, licenses and insurance, and are guaranteed no compensation or minimum number of assignments, strongly supports the conclusion that Plaintiffs were independent contractors. Plaintiffs cite to the fact that the most recent iteration of the Agreement contains certain procedural guidelines in an appendix to the Agreement. Pl. Mem., p. 8. The appendix does not tell the agents how to do their job, plan their routes or pick-up the debtor's vehicle. Rather, it communicates certain paperwork requirements, time frames for updates on status which are driven by lenders' expectations, and certain basic information about debtor contacts to ensure compliance with applicable laws, including the Fair Debt Collection Practices Act. None of these are indicia of a common plan to "control" the agents in the manner of employees. Numerous cases hold that having certain contractual specifications relating to the independent contractor's performance does not equate to control. See, e.g., Chao v. Mid-Atlantic Installation Serv., Inc., 2001 U.S. App. LEXIS 14804, *6 (4th Cir. 2001) (requiring

11

cable installers to provide progress reports and meet installation specifications "is entirely consistent with the standard role of a contractor who is hired to perform highly technical duties"); <u>Martinez-Mendoza v. Champion Int'l Corp.</u>, 340 F.3d 1200, 1211 (11th Cir. 2003) (plaintiffs cannot establish control by citing to contract specifications for performance standards).

<u>Second</u>, the mere fact that the agents receive periodic reminders of company procedures and policies is likewise not indicative of the right to control. Pl. Mem., pp. 8-9.  Nor are suggestions about how to do the job in a professional manner indicative of control. <u>See</u> <u>Garrett v. Phillips Mills, Inc.</u>, 721 F.2d 979, 980 (4th Cir. 1983) (court notes that "[a]lthough [defendant] sometimes made suggestions concerning methods of selling fabrics, [plaintiff] was never required to follow the suggestions"). Here, too, while Renovo communicated suggestions from time to time, there is no evidence that any agent was ever required to accept such suggestions or was disciplined for failing to do so.  Indeed, it would be impossible to enforce such suggestions as the agents are out in the field with no manager riding in the truck with them.

<u>Third</u>, Renovo's standardized electronic means (the so-called "RDN") for disseminating the assignments is irrelevant to the issue of whether there is a common plan to treat the agents as employees. Using a computer to communicate assignments is not indicative of control.  Tellingly, the agents are free to decline assignments received through the RDN, just as they were free to refuse assignments sent by phone or facsimile. Cowlbeck Decl., ¶ 9.  Nor is it material that Renovo requires the agents to submit reports or updates within certain prescribed window periods (24 hours, 48 hours, etc.).  These reporting requirements are part of the nature of the business itself, which is driven by lenders' expectations. Cowlbeck Decl., ¶ 7.

<u>Fourth</u>, Plaintiffs cite to e-mail communications from Recovery One Regional Manager, Robert Howard, and former Recovery One FAS, Chad Whitmer, regarding weekly numerical  goals for

12

repossession as well as exhortations to keep company-owned vehicles in service. Pl. Mem., p. 9.  The e-mails relied upon by Plaintiffs are from just one subsidiary, Recovery One, and one regional office at one point in time.  Furthermore, even if Renovo communicated similar goals to all agents, it is not evidence of a common plan to treat them as employees.  Put simply, corporate goal-setting, so long as the agent is not told <u>how</u> he must accomplish the goal, is not evidence of the right to control. <u>See</u> <u>Singh v. 7-Eleven, Inc.</u>, 2007 U.S. Dist. LEXIS 16677, * 13 (N.D. Calif. 2007) (setting standards "without actual control of day-to-day operations is not sufficient to establish an employer-employee relationship"); <u>Strange v. Nationwide Mutual Ins. Co.</u>, 1997 U.S. Dist. LEXIS 13034, * 22 (E.D. Pa. 1997) (the establishment of sales goals for underperforming agents "does not convert the status as an independent contractor to that of an employee").  Plaintiffs were never told when or how much to work.  However, if the agent was utilizing a company-owned vehicle, Renovo was entitled to communicate expectations concerning the use of a company asset.  Plaintiffs were free to hire helpers to keep the truck running or to split the use of the truck with another agent.  Critically, Renovo communicated no such expectations to those agents who owned their own vehicles, establishing that the concern was not over Plaintiffs' personal work hours, but over deployment of a corporate asset. Cowlbeck Decl., ¶ 17.

<u>Fifth</u>, Plaintiffs cite to similar pay requirements as indicative of a common plan or policy. Pl. Mem., p. 10.  But the pay plan is a flat rate upon completion of assignments, which is entirely consistent with independent contractor status, and completely inconsistent with employee status.  Unlike an employee, who is paid regardless of results, an agent is only paid if an assignment is completed.  Furthermore, Plaintiffs' own affidavits reflect that pay practices have differed over the relevant time period, with more individualized pay plans under the prior ownership.  Howard Decl., ¶ 3; Jones Decl., ¶ 5; Gentrup Aff., ¶ 8; Yarbrough Decl., ¶ 6; Schwartz Decl., ¶ 7.

13

Plaintiffs' remaining contentions in support of the proposition that they are similarly-situated with agents for the other Renovo subsidiaries are similarly unpersuasive. Pl. Mem., pp. 10-11. They cite the standardized nature of the Agreement, the fact that since the acquisition the companies use similar forms and can access data in a similar manner, and the fact that the corporate website for the subsidiaries contains the same description of the baseline requirements to apply for the repossession agent position. Id. None of these facts—which establish nothing more than that Renovo has a centralized administration since the acquisitions in late 2005 and early 2006—are evidence of a common plan or policy to treat the agents as employees and to not pay them overtime. To the contrary, the evidence of a common plan or policy, to the extent it exists, supports the opposite conclusion: namely, Renovo's expectation that the agents are independent contractors who control the means and manner of their day-to-day performance. See Cowlbeck Decl., ¶¶ 8-14.

### C. The Preliminary Evidence Shows That Plaintiffs Are Independent Contractors, Not Employees, And, Therefore, Conditional Class Certification Should Be Denied For This Reason As Well.

Plaintiffs contend that the "preliminary evidence" indicates there is substantial support for the conclusion that the agents are employees. Pl. Mem., p. 12. To the extent the merits are pertinent to the conditional certification question, they strongly argue against expansion of this case.[7] The IRS is the only agency or court to consider the question of whether repossession agents are independent contractors. In a private letter ruling, the IRS concluded that such agents are independent contractors. A copy of the IRS determination is attached as Exhibit D hereto.[8] The salient factors considered by the

---

[7] Although the underlying merits are not a formal factor to be considered in conjunction with a motion for conditional class certification, Defendants address them herein for two reasons. First, Plaintiffs' motion focuses heavily upon their erroneous view of the merits. Second, Plaintiffs' claims to be de facto employees are so merit less that this case should not be expanded in scope. See Freeman, 256 F. Supp. 2d. at 944 (noting courts' obligation to avoid "stirring up" of litigation through unwarranted class solicitation).

[8] The IRS test for determining independent contractor status differs slightly from the test applied under the FLSA, but there is substantial overlap of the factors considered under each test.

IRS are likewise present here:  the agents all signed agreements designating them as independent contractors, paid their own taxes and many of their expenses, were not guaranteed compensation, set their own schedule, and worked out in the field free from day-to-day supervision of their performance. See Exh. D.

Renovo agrees with Plaintiffs that the multi-factor "economic realities" test governs the determination of whether the agents are independent contractors for purposes of the FLSA, but disagrees with Plaintiff's application of that test to the facts of this case.  Each element of the multi-factor test is addressed briefly below in the order discussed by Plaintiffs:

**Permanency.**  Plaintiffs concede their Agreement was not for a definite term, and was terminable by either party on 10 days' notice.  Far from supporting a finding of permanency, this undisputed fact weighs against such finding.  In Nichols v. All Points Transport Corp., 364 F. Supp. 2d 621, 631 (E.D. Mich. 2005), the court addressed this factor in the analogous context of an FMLA claim and concluded that where the delivery drivers' contract was "terminable at any time by either party," it was strongly suggestive of a non-permanent relationship.  See also Arbaugh v. Y&H Corp., 2003 U.S. Dist. LEXIS 5568, *15 (E.D. La. 2003) (court finds that the right of either party to cancel the contract on thirty days notice weighs in favor of a finding that the drivers were not employees).  The cases on which Plaintiffs rely are distinguishable. Pl. Mem., pp. 12-13.  The decision in Imars v. Contractors Mfg. Servs., Inc., 1998 U.S. App. LEXIS 21073 (6th Cir. 1998), was unpublished and contained only a cursory examination of the issue of permanency, focusing primarily on the exclusivity of the relationship, rather than its duration.  Likewise, Rumpke v. The Rumpke Container Serv., Inc., 240 F. Supp. 2d 768 (S.D. Ohio 2002), is distinguishable.  Rumpke was an ERISA case decided under a different common law test.  Moreover, in Rumpke, the plaintiff had worked as a route supervisor for sixteen years. 240 F. Supp. 2d at 773.  Here, none of the Plaintiffs worked for Recovery One remotely

that long and, indeed, there is a high degree of turnover in the agents who perform services for Defendants. Cowlbeck Decl., ¶ 16.

**Degree of Skill.**  Plaintiffs contend that this factor cuts in their favor because the repossession agent position does not require formal education beyond high school, and the work is purportedly "routine." Pl. Mem., p. 13.  The absence of a post-secondary school educational requirement is not dispositive of whether a position requires the exercise of skill and judgment.  Furthermore, contrary to Plaintiffs' contention, their work is anything but routine.  They must be able to use computers, exercise independent judgment and discretion in planning their routes, assess potentially dangerous and volatile situations involving debtors, and be conversant with the applicable laws.  In addition, most of the agents, in turn, hire their own helpers or employees, for whom they are responsible. Cowlbeck Decl., ¶ 12.  See Nichols, 364 F. Supp. 2d at 632 (court finds degree of skill required for drivers favors finding of independent contractor status where they hire their own helpers, lease and maintain trucks, comply with applicable laws and regulations, and pay applicable operating expenses).

**Agent's Investment.**  Plaintiffs characterize their investment as "minimal." Pl. Mem., p. 13.  To the contrary, every agent is required to either utilize his own vehicle or lease a vehicle from the company.  While the company pays for some expenses associated with use of the company vehicle, numerous other expenses are absorbed by the agents.  They pay for their own health insurance, bonds, licenses, taxes, and personal expenses on the road.  Moreover, they are required to either own a computer or purchase a laptop computer from the company.[9] Cowlbeck Decl., ¶ ¶ 13-14.  Perhaps most significantly, the agents pay for their own helpers, including all associated taxes, health insurance and other benefits. Id., ¶ 12. See Nichols, 364 F. Supp. 2d at 633 (finding that delivery drivers satisfied this

---

[9]  One of the declarants, Yarbrough, indicates that the company failed to deduct the payment he owed for the computer provided to him.  A clerical oversight of this nature is of no moment to assessment of this issue.  One of the other affiants, Jones, acknowledges that he paid for his laptop, and the testimony of Defendants' COO, David Cowlbeck, confirms that the agents' responsibility for this expense is a well-documented requirement. Cowlbeck Decl., ¶ 14.

component of the multi-factor test); <u>Chao</u>, 2001 U.S. App. LEXIS 14804 at *8 (installers' responsibility for certain equipment, insurance, withholding of their own and their employees' taxes represents an "investment" typically expected of independent contractors, not employees); <u>Herman v. Mid-Atlantic Installation Servs., Inc.</u>, 164 F. Supp. 2d 667, 675 (D. Md. 2000) (installers' responsibility for expense of truck, <u>even if the installer leases one</u>, as well as taxes, insurance, etc., represent a significant investment which is characteristic of a contractor).  The <u>Rumpke</u> case cited by Plaintiffs is once again distinguishable.  In <u>Rumpke</u>, unlike here, the company <u>prohibited</u> plaintiff from providing his own truck, and apparently paid for everything, up to and including office supplies.  Furthermore, the company-supplied vehicle bore the name of the company. 240 F. Supp. 2d at 772-73.[10]  None of these facts are present here.

**Opportunity for Profit or Loss.**  Plaintiffs contend that the agent "bears no risk of loss." Pl. Mem., p. 15.  Nothing could be further from the truth.  As Plaintiffs concede, they are paid a flat rate only upon completion of a repossession. Yarbrough Decl., ¶ 7; Schwartz Decl., ¶ 8. Despite the absence of any guaranteed compensation, the agents are responsible for paying many of their expenses, including the expenses associated with their own helpers.  Hence, Plaintiffs' efforts directly determined whether their business made or lost money. <u>Chao</u>, 2001 U.S. App. LEXIS 14804 at * 7 (installers' profit or loss depends on decisions they make relative to expenses, whether to hire their own employees, and how efficiently they work; installers' lack of total control over how many customers they service in a given day and lack of control over their rate of pay do not detract from their independent contractor status).

Plaintiffs argue that Renovo "controlled" their assignments or whether their territory or leased vehicle would be split with other agents. Pl. Mem., pp. 15-16.  This is incorrect.  Rather, agents who completed more assignments or provided better customer service received more orders. Instead of

---

[10]  Plaintiff Schwartz's declaration indicates there was a company logo on his truck.  This is contrary to Renovo policy since it acquired Recovery One in September 2005. Cowlbeck Decl., ¶ 13.

undermining their status as independent contractors, it is strongly suggestive of such status. Once again, Plaintiffs' reliance upon <u>Rumpke</u> is misplaced. <u>Rumpke</u> was not addressing the "opportunity for profit or loss" because it was not a component of the test at issue in that case. Furthermore, as previously stated, in <u>Rumpke</u> the plaintiffs were <u>forbidden</u> from using their own trucks and defendant had control over a fixed, physical route. 240 F. Supp. 2d at 773-75. Here, the agents were free to utilize any of their own equipment, including their own vehicle. Assignment flow was not determined by a physically circumscribed route, but rather by merit. Over time, the better performing drivers received more assignments, had larger territories, and had access to the company vehicle (where applicable) for longer periods.

**Right of Control.** Renovo has already demonstrated the myriad ways in which the agents act as independent business people, not as employees. Likewise, Plaintiffs' contentions about the "Be a Professional" memo, the appendix to the latest iteration of the Agreement, and the e-mails to the agents, have already been addressed herein. Suffice it to say, Plaintiffs confuse advice with direction, and confuse expectations regarding use of the company vehicle with direction regarding the agents' personal schedules, which never occurred. The <u>Rumpke</u> case is readily distinguishable with respect to this factor, too, as that case involved evidence of extensive day-to-day control over the plaintiffs' work. 240 F. Supp. 2d at 773-775.[11]

**Agents Integral to Business.** Renovo does not dispute that the independent contractor agents as a whole are the principal means by which repossessions take place. Even if Plaintiffs satisfy this one factor, however, the six factor test as a whole supports Renovo's position. <u>Nichols</u>, 364 F. Supp. 2d at 634 (even where defendant did not dispute that the drivers were an integral part of its business, the court

---

[11] In their discussion of the "right of control" factor, Plaintiffs cite to a benefits determination by Renovo's workers' compensation carrier with respect to affiant Jimmy Yarbrough. Such determination has no bearing upon whether Renovo exercised a "right of control" over the Plaintiffs within the meaning of the "economic realities" test applicable to FLSA claims.

concluded that the six factors overall "demonstrate that the drivers are independent contractors"); Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991) (court observes that "[n]o one factor [in economic realities test] is dispositive").

**D.  Even If This Court Determines That Class Notice Should Issue, The Scope Of Such Notice Should Be Narrowly Circumscribed.**

Renovo has demonstrated herein that class notice should not issue at all.  Even assuming class notice were appropriate under these circumstances, which it is not, it should be strictly limited to the Kentucky region in which the named Plaintiffs performed services. Alternatively, and at a minimum, notice should be limited to Recovery One drivers, given the lack of evidence proffered by named Plaintiffs concerning drivers at the Cyber Asset and Ascension subsidiaries.

Plaintiffs are not similarly-situated with the putative class of repossession agents across the country because Plaintiffs worked almost exclusively for just one of the three Renovo-owned entities—Recovery One. Gentrup Aff., ¶ 2; Yarbrough Decl., ¶ 2; Whitmer Aff., ¶ 3; Schwartz Decl., ¶ 2; and Jones Decl., ¶ 2.  Moreover, Plaintiffs were concentrated in just one sub-region of Recovery One—Kentucky—whereas Renovo has agents dispersed throughout the Midwest, Southeast and Southwest regions of the United States. Cowlbeck Decl., ¶ 4; Gentrup Aff., ¶ 3; Yarbrough Decl., ¶ 2; Schwartz Decl., ¶ 2; Jones Decl., ¶ 2.  The e-mails and correspondence on which Plaintiffs principally rely for their contention that they were subject to a common plan or policy are all from just one Regional Manager, Robert Howard, who was responsible for Recovery One only, and an FAS, Chad Whitmer, who reported to Howard.  Plaintiffs have not tendered a single affidavit from an agent for Ascension or Cyber Asset, with the exception of Whitmer, who was affiliated with Cyber Asset for a total of four (4) weeks. Whitmer Aff., ¶ 3.

Numerous courts have strictly limited the scope of conditional certification where movants have failed to introduce admissible evidence that others outside their specific company, territory or region

were similarly-situated to them. <u>See</u>, <u>e.g.</u>, <u>Belcher v. Shoney's, Inc.</u>, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (court does not approve sending of notice to employees of Defendant's other restaurant chains because "none of the named Plaintiffs were employed at" the other non-Shoney's restaurants); <u>Gutescu v. Carey International, Inc.</u>, 2003 U.S. Dist. LEXIS 27507, **46-48 (S.D. Fla. 2003) (denying conditional certification of a nationwide class of chauffeurs in an overtime case, court notes that "[e]xpanding the collective action beyond Miami would unduly complicate this action by requiring consideration of too many dissimilar circumstances"); <u>Molina v. First Line Solutions LLC</u>, 2007 U.S. Dist. LEXIS 47658, **42-45 (N.D. Ill. 2007) (court limits conditional certification to Defendant's Chicago office, which was the territory in which all three named plaintiffs worked).  Moreover, in <u>Sheffield</u>, the court denied conditional certification of a nationwide class in an overtime case where, among other things, the putative class members had performed work for several smaller companies that were acquired by defendant.  211 F.R.D. at 413.

Finally, if the Court determines that notice should issue at all, Renovo requests that it be permitted to be heard separately on the issue of the content of the notice attached as Exhibit 3 to Plaintiffs' memorandum of law, in the event it is unable to work through issues pertaining to the notice language with Plaintiffs' counsel within a reasonable time frame to be set by the Court.

## IV.    CONCLUSION

For all of the foregoing reasons, Renovo requests that Plaintiffs' motion be denied in its entirety, or, alternatively, that the scope of the notice be limited in the manner described herein.

Dated: November 2, 2007                     Respectfully submitted,

                                    By:     /s/ Joel W. Rice_____
                                            One of the Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Joel W. Rice, hereby certify that on November 2, 2007, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Deborah R. Grayson
> Bruce H. Meizlish
> MEIZLISH & GRAYSON
> 830 Main Street, Suite 999
> Cincinnati, OH 45202

> /s/ Joel W. Rice
> Joel W. Rice

Chicago 87794.1