IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER GENTRUP**, et al., | : | Case No. 1:07cv430 |
| | : | |
| Plaintiffs, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING PLAINTIFFS' |
| | : | MOTION FOR LEAVE TO AMEND |
| **RENOVO SERVICES, LLC,** et al., | : | |
| | : | |
| Defendants. | : | |

Before the Court is Plaintiffs' Motion for Leave to File Second Amended Complaint

("Motion for Leave to Amend") (doc. 183).  For the following reasons, Plaintiffs' Motion is

**GRANTED**.

## I.  BACKGROUND

In June 2007, nine plaintiffs (hereinafter "Plaintiffs"), all of whom work as repossession

agents, filed a Collective Action Complaint ("Complaint")[1] against Renovo Services LLC and its

wholly owned subsidiaries (hereinafter collectively referred to as "Renovo") seeking "all

available relief under the Fair Labor Standards Act of 1938 ('FLSA'), 29 U.S.C. §§201, et seq."

(Doc. 1 at 1.)  Defendant Renovo is in the business of repossessing vehicles for its customers.

Plaintiffs are or were employed by Renovo purportedly as independent contractors.  In the

Complaint, Plaintiffs claim that they are not independent contractors but rather are "covered

employees" entitled to the FLSA's protections.  (*Id*. at ¶ 136.)  Plaintiffs allege that they

regularly work over forty hours per workweek without receiving the time-and-one-half overtime

---

[1]  The Collective Action Complaint is filed as CM/ECF Document 1.

premium required by the FLSA.  The Complaint does not specifically allege that Renovo is violating the FLSA in any respect other than failing to pay Plaintiffs the overtime premium.  However, the Complaint generally claims that Plaintiffs are entitled to the FLSA's protections and that Defendants have "violated the FLSA with respect to Plaintiffs and the class by, *inter alia*, failing to [pay overtime wages.]" (*Id*. ¶ 138.)

On September 26, 2007, Plaintiffs filed a Motion for Conditional Certification requesting that this Court conditionally certify a class of all former and current repossession agents employed by Renovo.  The Court granted the motion on January 24, 2008 and approved the Notice of Lawsuit and Notice of Consent to be sent to individuals within the conditionally certified class on February 12, 2008.  One hundred five individuals then filed notices of consent to join the lawsuit, joining the original nine Plaintiffs.

On August 4, 2008, Defendants moved for leave to file an amended answer to assert a new affirmative defense: the motor carrier exemption provided for in section 13(b)(1) of the FLSA.  The motor carrier exemption eliminates overtime liability for certain commercial vehicles.  Legislation enacted on June 6, 2008 modified the motor carrier exemption to, *inter alia*, eliminate overtime liability as to smaller, otherwise qualifying commercial vehicles for the time period August 10, 2005 through August 10, 2006 — a time period that overlaps the conditional class recovery period in this case.  The Court granted Defendants' motion, and Defendants filed an Amended Answer on August 7, 2008.

Approximately two months later, the parties filed a Joint Motion to Vacate Existing Case Schedule and Establish Deadline for Dispositive Motion Directed at Motor Carrier Issue.  In that motion, the parties explained that they had "concluded that it would promote efficiency to have

the motor carrier defense disposed of first, as such ruling may affect the size of the existing class, the scope of discovery, and the attendant expense and administrative complexity." (Doc. 170 ¶ 2.) The Court granted the motion, thereby vacating the previously established deadlines and setting a deadline of April 1, 2009 for Defendants to file a summary judgment motion based solely on the motor carrier issue. The parties agreed to focus discovery solely on "the threshold motor carrier issue." (*Id.* ¶ 3.)

Three times between February 2009 and September 2009, the parties filed joint motions to extend the deadline for Defendants to file a motion for summary judgment on the motor carrier issue, explaining that they needed additional time for discovery on the issue and to engage in settlement discussions.[2] The Court granted each of these motions, and the last deadline set for the submission of Defendants' limited motion for summary judgment was November 2, 2009.

On September 30, 2009, as a predicate to Defendants' anticipated motion, the parties filed factual stipulations regarding the motor carrier exemption defense. Two weeks later (and two weeks before the deadline for Defendants to file their motion), Plaintiffs filed the currently pending Motion for Leave to Amend.

Plaintiffs seek leave to amend the Complaint to add a claim that Defendants violated a second specific provision of the FLSA: the minimum wage provision. They also seek to add a new Renovo subsidiary as a party. Defendants object to Plaintiffs' motion, arguing that Plaintiffs unduly delayed requesting leave to amend, that the untimely amendment will substantially prejudice Defendants, and that the proposed amendment is futile.

---

[2] The parties engaged in a mediation on July 1, 2009 that proved unsuccessful.

## II.  DISCUSSION

Under Civil Rule 15(a), a party may amend a pleading once as a matter of course at any time before a responsive pleading is served but may otherwise seek amendment only by leave of the court or by written consent of the adverse party.  Because cases "should, as far as possible, be determined on their merits and not on technicalities," *Cooper v. American Emp. Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961), courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).

Nonetheless, a court may deny a motion to amend on the basis of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the proposed amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).  The ultimate decision of whether to permit amendments is within the discretion of the court.  *See Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 666 (6th Cir. 2005).

### A.  Undue Delay

In the present case, Plaintiffs' motion to amend comes more than two years after the filing of the original Complaint.  In the face of such a long delay in requesting leave to amend, the Court must "weigh the cause shown for the delay against the resulting prejudice to the opposing party."  *Johnson v. Ventra Group, Inc.*, No. 96-1463, 1997 WL 468332, at *2 (6th Cir. Aug. 13, 1997) (citing *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 873 (6th Cir. 1973)).  "Delay, standing alone, is an insufficient basis for denying leave to amend, and this is true no matter how long the delay."  *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000) (citing *Moore v. City of Paducah*, 790 F.2d 557, 559-62 (6th Cir. 1986)); *Tefft v. Seward*,

689 F.2d 637, 640 n. 2 (6th Cir. 1982) ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself[,] to disallow an amendment of a pleading.").

Plaintiffs explain the delay in filing their Motion for Leave to Amend as follows:

> During the course of the litigation, Plaintiffs have learned that Defendant's mis classification [sic] of the agents as independent contractors not only resulted in Defendants' avoidance of overtime obligations, but in many weeks, resulted in Defendants failure to pay the agents even the minimum wage. Repossession agents were only paid for successful repossessions. An agent might work upwards of 80 hours a week with little success in recovering vehicles, resulting in earnings far less than the minimum hourly wage.
>
> *   *   *
>
> There has been no discovery conducted on the earnings of the Plaintiffs. That portion of discovery has been deferred until the conclusion of the litigation of the [motor carrier] issue. Plaintiffs' counsel has learned, however, through their many conversations with the individual Plaintiffs concerning the [motor carrier] defense, that during workweeks where they had few or no recoveries, their pay fell below the applicable minimum wage. Some class members earned no money at all during some workweeks.

(Doc. 183 at 3-4.)

Defendants dispute this explanation and assert that Plaintiffs have known of their potential minimum wage claim since they filed their Motion for Conditional Certification more than two years ago. That motion included affidavits from Plaintiffs stating that they worked between sixty and seventy hours per week while only being reimbursed for completed repossessions on a flat-rate basis. (Doc. 186 at 8, citing doc. 29.) Defendants state that these are nearly the same allegations underlying Plaintiffs' proposed minimum wage claim.

In response to Defendants' opposition, Plaintiffs further elaborate on the cause for the delay. Plaintiffs state that they did not "sit on their hands" as Defendants suggest but, rather, worked actively after the filing of Defendants' Amended Complaint to gather information from the 114 class members so that Plaintiffs and Defendants could discuss settlement and work on stipulations on the motor carrier exemption defense. It was during this period that Plaintiffs discovered that "the nature of the Plaintiffs' class changed considerably with the addition of 105 new opt-in Plaintiffs." (Doc. 187 at 6.) In particular, Plaintiffs state that while preparing settlement proposals, they discussed hours and earnings with a number of Plaintiffs and discovered a wide range of earnings, reflecting not only differences in experience but also in available work within an agent's area. Following the failure of mediation, Plaintiffs continued to canvass the class and received additional responses supporting minimum wage violations among class members.

The Court finds Plaintiffs' explanation for the delay in filing the Motion for Leave to Amend plausible. Facts presented by Plaintiffs in their Motion for Certification, namely that Plaintiffs might work sixty or seventy hours a week but were only paid a flat rate based on the number of successful repossessions, laid a foundation for the minimum wage claim in an abstract sense. However, facts indicating that certain individual Plaintiffs may have been paid less than minimum wage did not emerge until counsel obtained employment and repossession success information from each of the 114 Plaintiffs. This information did not emerge until mid-2009 when the parties were preparing for mediation. Had the parties engaged in discovery on the merits of the case at an earlier date (which would have occurred but for the parties' agreement to refrain from merits discovery until resolution of the motor carrier exemption defense), the

information regarding the hours worked and repossessions made by individual Plaintiffs would have come to light earlier. However, both parties in this case agreed to recommend that the Court bifurcate discovery and resolve the motor carrier issue as a preliminary step. Given these circumstances, the Court does not find that Plaintiffs' delay in requesting leave to amend the Complaint was unjustified or inexcusable.

This case is distinguishable from those in which the district court found a delay of two years inexcusable. Defendants cite *Nauroth v. Southern Health Partners*, No. 07-CV-539, 2009 WL 3063404 (S.D. Ohio Sept. 21, 2009) as a case with similar circumstances and in which this Court denied a motion for leave to amend because of inexcusable delay. In *Nauroth*, as in this case, the time between the filing of the original complaint and the motion for leave to amend was approximately two years. However, that is where the similarities between the two cases end. In *Nauroth*, the plaintiff sought leave to amend the complaint to add a new party nearly one year after the close of discovery, after one defendant had been dismissed on summary judgment, and after the last remaining defendant's motion for summary judgment was ripe for review. This Court concluded in *Nauroth* that the plaintiff failed to show good cause for such delay when the newly discovered information would have been readily available had the plaintiff been diligent in conducting discovery.

Other cases relied on by Defendants regarding inexcusable delay are similarly distinguishable. *See*, *e.g.*, *Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999) (denying motion for leave to amend when both the discovery and dispositive motion deadlines had passed); *Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003) (denying motion for leave to amend that was filed almost two years after the discovery and dispositive motion deadlines had

passed and eight months after the district court dismissed most of the plaintiffs' claims). In this case, unlike in the cases cited by Defendants, discovery on the merits has not even begun, and Plaintiffs have justified their delay in filing their Motion for Leave to Amend.

**B. Undue Prejudice**

Defendants next argue that they would be substantially prejudiced if Plaintiffs are granted leave to amend their Complaint. Defendants remind the Court that in October 2008, the parties jointly requested that discovery on the merits be stayed so that Defendants could first file a summary judgment motion on the motor carrier exemption. The parties advised the Court that if Defendants' motion on the motor carrier issue was successful, it would substantially narrow the size of the class. The parties devoted the next year to reaching factual stipulations on issues related to that motion. Only after the parties filed stipulations regarding the motor carrier issue and Defendants began preparation of their motion for summary judgment on that defense did Plaintiffs file their motion for leave to amend to add the minimum wage claim. In Defendants' words:

> Should Plaintiffs' amendment be allowed, it would render the past year's worth of litigation pointless because the [motor carrier] defense *does not apply to minimum wage claims*, which means that the [motor carrier] motion would no longer have the intended effect of narrowing the class. Had Plaintiffs sought leave to amend earlier, Defendants would have simply proceeded with class-wide discovery a year ago instead of participating in a lengthy, and ultimately wasteful, stipulation process.

(Doc. 186 at 2.) Defendants further characterize Plaintiffs' requested amendment as "nothing more than a tactical effort to stave off the potential dismissal of some or all of the Plaintiffs from this case and prolong this litigation." (*Id*. at 3.) Defendants again attempt to liken this case to *Nauroth*, in which the Court found granting the plaintiff's request for leave to amend would

prejudice the defendant when doing so "would effectively set the clock back to day one and force [the defendant] to go through another discovery period before obtaining any resolution in the case." *Nauroth*, 2009 WL 3063404 at *7.

"To determine whether an amendment would cause prejudice, a court should consider whether the amendment would: 1) require the opposing party to expend significant additional resources to conduct discovery and prepare for trial; 2) significantly delay the resolution of the dispute; or 3) prevent the plaintiff from bringing a timely action in another jurisdiction." *Dottore v. National Staffing Services, LLC*, No. 3:06CV01942, 2007 WL 2114668, at *4 (N.D. Ohio July 20, 2007) (citing *Phelps v. McClellan*, 30 F.3d 658 (6th Cir. 1994)).

With regard to the first factor for consideration, the Court finds that allowing Plaintiffs to amend the complaint to add the minimum wage claim would not necessarily require Defendants to expend significant additional resources to prepare for trial. The work the parties did in preparing to brief the motor carrier defense is not for naught. Rather, Defendants still will use that information to potentially eliminate the overtime wage claim of some of the class members. Addition of the minimum wage claim may have the effect of allowing some Plaintiffs to remain in the suit who would otherwise have been dismissed by application of the motor carrier exemption. However, it is not a foregone conclusion that the motor carrier exemption would, in fact, have substantially narrowed the class. Furthermore, to the extent that Defendants will have to spend additional resources to prepare for trial, it is a consequence of a bifurcated discovery plan that Defendants themselves requested. Defendants made the tactical choice to proceed with discovery on the limited issue of the motor carrier defense. That Plaintiffs learned of specific

and individualized factual grounds for another claim during their investigation of the motor carrier issue is a foreseeable result of that choice.

The second factor the Court must consider in determining whether allowing Plaintiffs to amend would result in significant prejudice to Defendants is whether it would significantly delay the resolution of the dispute. This case has already been on the Court's docket for nearly two and a half years, and the Court is eager to see this matter proceed to resolution. However, the delay to this point has been the result of Defendants' request to amend their Answer and postpone merits discovery, not because of any acts on the part of Plaintiffs. Defendants presumably would have undertaken some amount of merits discovery even after any resolution of the motor carrier exemption issue. The Court cannot assume that Defendants' planned motion for summary judgment on the exemption would have so substantially reduced the number of Plaintiffs that discovery on the merits would have been entirely unnecessary. Furthermore, the discovery required by the newly asserted claim is directed at precisely the same parties, and the additional discovery required to address the new claim is closely related to the discovery that would be entailed in defending the originally asserted FLSA claim. Thus, allowing Plaintiffs to amend their Complaint may add to the time required to resolve this case, but it is far from certain to what extent.

As to the third factor, the Court finds that there could be prejudice to Plaintiffs if the Court denies them leave to add the minimum wage violation claim because the claims might be time-barred if brought in a new and separate action. Furthermore, requiring both Plaintiffs and Defendants to engage in substantially the same discovery on the FLSA claims in two separate lawsuits would be less than efficient for both parties.

The Court recognizes that granting Plaintiff leave to file an amended Complaint adding a new claim may cause some prejudice to Defendants. However, in weighing the cause shown for the delay against the resulting prejudice to the opposing party, the Court concludes that denying Plaintiffs' motion to amend would result in greater potential prejudice to Plaintiffs than to Defendants.

## C. Futility of Amendment

Finally, Defendants assert that Plaintiffs' motion should be denied as futile because the proposed amendment would not survive a motion to dismiss. Defendants assert that Plaintiffs' failure to specify the names of the plaintiffs who allegedly did not receive minimum wage, the flat fee those plaintiffs were paid, the dates of the weeks they did not receive minimum wage, the number of hours they worked during those weeks, and the compensation they received during those weeks renders the minimum wage claim subject to dismissal under Rule 12(b).

To withstand a motion to dismiss, a plaintiff's allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Moreover, the plaintiffs' "obligation to provide the 'grounds' of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007)). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Id.*

Plaintiffs' proposed Second Amended Complaint in this case does not provide the names of the employees who did not receive minimum wage, nor does it specify the hours worked for which minimum wage was not received. However, the Court does not find these omissions to be fatal to the class action claim. The proposed Second Amended Complaint makes the following allegations:

> Pursuant to Defendants' common business practices, Class Members are paid only for completed repossessions. If a Class Member is unable to repossess the vehicle there is no payment for hours expended in an attempted repossession. Class members are paid a flat rate for repossessions, depending on whether it is voluntary or involuntary, regardless of the amount of time involved. During some work weeks the regular rate of Class Members, e.g., the amount paid divided by the number of hours worked, is less than the minimum wage rate required by the FLSA.

(Doc. 183-1 ¶ 31.) Although Plaintiffs do not specify the names of the 114 class members who allegedly were paid less than minimum wage or the specific hours for which minimum wage was not received, these omissions do not make the minimum wage violation allegation purely speculative. To the contrary, the allegations support an inference that Defendants had a common business practice that resulted in a failure to pay appropriate minimum wages.

The Sixth Circuit has recently reiterated that a pleading does *not* require "detailed factual allegations" to survive a motion to dismiss. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level." *Id*. The Court finds that Plaintiffs' allegations as set forth in the proposed Second Amended

Complaint, *i.e.*, that class members are not paid for hours expended in unsuccessful repossession attempts and that during some work weeks, the amount paid to class members divided by the number of hours worked is less than minimum wage, satisfy that standard.

The cases cited by Defendants that suggest a contrary result are not persuasive. In *Zhong v. August Corp.*, 498 F. Supp. 2d 625 (S.D.N.Y. 2007), the court stated that "where the plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked for which these wages were not received." *Id.* at 628. The court further stated that "where a plaintiff brings an FLSA claim 'for and in behalf of himself . . . and other employees similarly situated,' the complaint should indicate who those other employees are, and allege facts that would entitle them to relief." *Id.* While Zhong's individual minimum wage violation claim survived the defendant's motion to dismiss, the court found that Zhong had not adequately pled a claim on behalf of other employees similarly situated because the compliant did not make any reference to a policy to which the other employees were subject. The court explained, "[w]hile neither the FLSA nor its accompanying regulations define the term 'similarly situated,' courts have held that plaintiffs must, at the least, provide 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs . . . were victims of a common policy or plan that violated the law.'" *Zhong*, 498 F. Supp. 2d at 630 (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y 1998)).

Defendants also cite *Jones v. Casey's General Stores*, 538 F. Supp. 2d 1094 (S.D. Iowa 2008) in support of their position that Plaintiffs' minimum wage violation claim would not survive a Rule 12(b) motion. In *Jones*, the plaintiffs moved for leave to amend the complaint after conditional certification and the inclusion of 500 individuals through the opt-in process.

14

The amended compliant proposed by the plaintiffs alleged that the defendants failed to compensate the plaintiffs for all hours worked. Relying on the *Zhong* court's observation that a complaint should allege the hours worked for which minimum wages were not received, the *Jones* court concluded that the "generic, conclusory assertions of a right to relief under the FLSA minimum wage provisions" in the proposed amended complaint were insufficient to permit an inference that even one member of the collective action class had a right to relief. *Id.* at 1102.

    *Zhong* and *Jones* are procedurally and factually distinguishable from this case. In *Zhong*, the putative opt-in class had not yet been certified, and the plaintiff did not allege the existence of any company policy that resulted in a minimum wage violation. *Zhong*, 498 F. Supp. 2d at 631. That court concluded that the complaint therefore did not give the defendant sufficient notice of the claim or a factual basis to determine whether similarly situated plaintiffs existed. In this case, the proposed Second Amended Complaint does allege a company policy that had the effect of depriving class members of minimum wages. Furthermore, the class members have all been identified, putting Defendants on notice of those Plaintiffs' claims and enabling them to look at their business records to determine the periods of time worked for which those individuals were not paid at a rate equal to or greater than the statutorily prescribed minimum wage. *See Nichols v. Mahoney*, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009) (distinguishing *Zhong* and finding that plaintiffs' allegation that defendants gave them bad checks, resulting in a violation of the FLSA's minimum wage provision, satisfied Rule 8's pleading standards because "[a]lthough plaintiffs have not alleged how many bad check[s] they each received, such information should be readily available to defendants from their own business records").

*Jones* also is distinguishable. In that case, the plaintiffs did not allege that their rate of pay was less than minimum wage. Rather, they alleged that the defendant failed to pay any wages for certain hours actually worked. 538 F. Supp. 2d at 1102. An employer does not violate the minimum wage requirements of the FLSA unless the total weekly wage paid is less than the minimum weekly wage requirement (which is equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement). *See United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960) (discussing FLSA section 206(a)). Therefore, the bare allegation that the plaintiffs were unpaid for certain hours worked did not state a claim for violation of the FLSA's minimum wage requirements.

In this case, the proposed Second Amended Complaint alleges that "[d]uring some work weeks, the regular rate of Class Members, e.g., the amount paid divided by the number of hours worked, is less than the minimum wage rate required by the FLSA." (Doc. 138-1 ¶ 31.) This allegation, combined with the factual predicate that Defendants' policy was to not pay Class Members for time spent on unsuccessful repossessions, is sufficient to state a claim under the FLSA. Defendants suggest that *Jones* demonstrates that each plaintiff in a large, opt-in class must list the hours worked for which minimum wage was not received in order to survive a motion to dismiss. This Court is not convinced that *Twombly* or any decision of the Sixth Circuit requires such specificity in a collective action complaint alleging a violation of the FLSA's minimum wage requirements.

## III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' Motion for Leave to File Second Amended Complaint (doc. 183). Defendants' Motion for Oral Argument on Plaintiffs' Motion for Leave (doc. 188) is denied, the Court having determined that oral argument is not essential to the fair resolution of the matter. The parties are to jointly prepare a proposed discovery and dispositive motion schedule for the Court's consideration and submit the same to Chambers within two weeks of the entry of this Order.

IT IS SO ORDERED.


___s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court