# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHRISTOPHER L. GENTRUP, *et al.*,       Case No. 1:07-cv-430

      Plaintiffs,

                                    Judge Timothy S. Black

      vs.

RENOVO SERVICES, LLC, *et al*.,

      Defendants.

## ORDER

This civil action is currently before the Court on the parties' briefs (Docs. 198, 199, 200, 201) regarding the scope of discovery pursuant to the Order of January 13, 2010.

## I.  BACKGROUND FACTS

This Fair Standards Labor Act ("FLSA")[1] collective action involves 115 Plaintiffs who assert that they were misclassified as independent contractors and were not paid overtime or compensated at the applicable minimum wage.  (Doc. 193 at ¶¶ 22-32, 132). Plaintiffs are former repossession agents who performed automobile repossessions on

---

[1] Congress enacted the FLSA in 1938 as a remedial statue "designed to correct labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977).  The intent of Congress in developing the collective action procedure was to limit the burden on similarly situated employees by allowing them to rely on representative testimony.  As the Supreme Court noted in *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989), a collective action under Section 216(b) allows employees "the advantage of lower individual costs to vindicate rights by pooling resources" as well as benefitting the judicial system by "efficient resolution in one proceeding of common issues of law and fact."  The FLSA provides that employers may not require employees to work more than forty hours per workweek unless those employees receive overtime compensation at a rate of not less than one-and-one half times their regular pay.  29 U.S.C. § 207(a)(1).

behalf of Defendants.  Plaintiffs' allegations are based on the premise that because they were paid a flat rate for each completed repossession, during weeks in which they had few or no repossessions, they may not have been paid the minimum wage in light of the hours they worked that week.  (*Id.* at ¶ 31).

Following the granting of Plaintiffs' motion for conditional class certification (Doc. 58), notice was sent to agents who had worked for Defendant Recovery One,[2] beginning March 26, 2008, and to agents who had worked for Defendant Ascension Recovery, and Defendant Cyber Asset Recovery, from the date of their acquisitions by Renovo (January 3, and March 7, 2006, respectively).

The class currently consists of 115 repossession agents, nine named-Plaintiffs, and 106 Plaintiffs who opted into the proceeding.  (Doc. 198 at 11).  As shown by their filed consents, these Plaintiffs reside in 20 different states.[3]  (*Id.*)  Although some repossession agents were assigned to more than one subsidiary, counsel estimates that approximately 60 Plaintiffs performed services for Recovery One; 35 for Ascension; and 20 for Cyber. (*Id.*)  Because the agents operated in separate territories, Plaintiffs are geographically isolated from one another, with the exception of a few who worked in contiguous territories in the same metropolitan area, such as Chicago, Atlanta, and Louisville.  (*Id.*)

---

[2]  Plaintiffs filed the action against Renovo Services, an asset recovery company that operates a nationwide network of repossession agents, and its three wholly-owned subsidiaries: Recovery One, Cyber Asset Recovery, and Ascension Recovery.

[3]  Alabama, Arkansas, California, Colorado, Delaware, Georgia, Illinois, Indiana, Kentucky, Maryland, Michigan, Missouri, Mississippi, North Carolina, Ohio, South Carolina, Tennessee, Texas, West Virginia, and Virginia.

Although Plaintiffs worked for different operating subsidiaries, the companies were part of a nationally-integrated network.  (Doc. 198 at 12).  The prior briefing on conditional certification indicates that the agents performed the same service, received assignments in the same manner and from a common source, had standard reporting requirements, received directions and interacted with Defendants' customer service representatives located in their Michigan headquarters, and were paid in a similar manner.[4]  (*Id.*)  As can be determined from the parties' Agreed Stipulations (Doc. 182), all but 12 of the Plaintiffs operated vehicles leased to them by Renovo, and two of these, named-Plaintiff Fred Schwartz and opt-in Plaintiff James Ray, drove both personal vehicles and vehicles leased from Renovo.  (*Id.*)

At all times, Defendants considered their repossession agents (including Plaintiffs) to be independent contractors, not employees.  (Doc. 194 at ¶¶ 22-32; Doc. 37, Aff. Def. No. 1).  Because of the nature of the job (driving alone in pickup trucks repossessing vehicles), and the fact that Defendants considered Plaintiffs independent contractors, Defendants do not have records of the hours Plaintiffs spent performing repossessions. Accordingly, Defendants do not know how many hours Plaintiffs allegedly "worked," and argue that cross-examination of Plaintiffs will be essential to evaluating their claims as to hours worked.

It is undisputed that Plaintiffs were paid a flat fee for each recovery.  The amount

---

[4]  Defendants dispute many of these contentions.

has changed over time and depended on whether a recovery was voluntary or involuntary, but the fee was standardized.  The same fee was paid for a recovery regardless of the time required to complete the recovery, and there was no compensation paid for unsuccessful attempts, resulting in a rate per hour that sometimes was less than the minimum wage. There was no effort by Defendants to provide any additional pay when agents worked more than 40 hours per week.

After Plaintiffs were permitted to amend their complaint to add a minimum wage claim, Defendants advised Plaintiffs that they intended to conduct classwide discovery. Plaintiffs objected and stated that they believed representative discovery or "sampling" was appropriate.  For the sake of judicial economy, Defendants agreed to bring this dispute to the Court, rather than to issue discovery which would result in motions to compel and for protective orders.

The Court held a conference with the parties in January 2010, at which time the parties argued their respective positions regarding discovery and case management.  In short, Plaintiffs advocate conducting representative discovery (specifically, subjecting 10 Plaintiffs to full discovery, including depositions, and subjecting an additional 10 to written discovery).  (Doc. 198 at 17).  Conversely, Defendants seek full discovery from all 114 Plaintiffs.

This issue has been fully briefed (Docs. 198, 199, 200, 201), and it is now ripe for consideration.

## II.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure grant courts broad discretion in determining the scope and method of discovery based upon the circumstances of each case.  Fed. R. Civ. P. 26(b)(2).  Specifically, Rule 26(b)(2) permits a court, upon its own initiative, to limit "the frequency or extent of use of discovery methods" if:

> the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

## III.    ANALYSIS

Defendants present six arguments against representative discovery: (1) each Plaintiff affirmatively chose to sue Defendants in this lawsuit and agreed that they would be subject to discovery; (2) courts routinely permit classwide discovery in classes similar in size to this one; (3) without classwide discovery, Defendants will be unable to defend against Plaintiffs' claims, as Defendants considered Plaintiffs independent contractors and did not maintain records of the hours they worked; (4) the determination of whether any given Plaintiff was improperly classified as an independent contractor is an individualized, fact-intensive inquiry; (5) individualized discovery is necessary for purposes of Defendants forthcoming decertification motion; and (6) denying Defendants discovery would deprive them of their due process rights.

-5-

The Court will address each argument in turn.

### A.    Plaintiffs Chose To Be Parties To This Lawsuit

Defendants argue that Plaintiffs signed consent forms agreeing that they would be subject to discovery, and, therefore, Plaintiffs should be required to submit to discovery. However, the consent forms advised Plaintiffs that they "may" be required to respond to discovery, which does not foreclose representative discovery.  (Doc. 61, Ex. A at ¶ 6).

In support of their argument, Defendants cite *Renfro v. Spartan Computer Servs., Inc.,* No. 06-2284-KHV, 2008 U.S. Dist. LEXIS 24269 (D. Kan. Mar. 26, 2008), where class wide discovery was required of 136 opt-in plaintiffs who signed consent forms stating that they could be subject to discovery.  In permitting class wide discovery,[5] the consent was part of the court's rationale, but the court also faulted the plaintiffs for making no particularized showing of undue burden.  *Id.* at 8.  Since the plaintiffs argued for a "blanket rule" against individualized discovery, the opinion gives no indication where the plaintiffs were geographically located or factors which may have shown the burdensomeness of discovery.  *Id.* at 9, n. 2.

In the instant case, Plaintiffs do not argue for a blanket rule; rather, they request representative discovery on the particular facts of this case.  Accordingly, the undersigned does not find that the consent forms alone compel this Court to impose discovery requirements on each individual Plaintiff.

---

[5]  The class-wide discovery at issue in *Renfro* was written discovery.

**B.      Classwide Discovery In FLSA Collective Action Cases**

Defendants cite numerous cases where courts have allowed classwide discovery in

FLSA collective action cases.  While these cases are persuasive, none of them are binding

Sixth Circuit authority.  *See, e.g., Renfro*, 2008 U.S. Dist. LEXIS 13194 at 5-6

(permitting discovery of all 136 plaintiffs); *Coldiron v. Pizza Hut, Inc*., No. CV-03-

05865, 2004 U.S. Dist. LEXIS 23610, at *6-7 (C.D. Cal. 2004) (permitting discovery of

all 306 opt-in plaintiffs); *Abubakar v. City of Solano*, No. S-06-2268, 2008 U.S. Dist.

LEXIS 17456, at *5, 10 (E.D. Cal. Feb. 22, 2008) (allowing discovery of all 160

plaintiffs); *Krueger v. New York Tel. Co.*, 163 F.R.D. 446 (S.D. N.Y. 1995) (authorizing

discovery addressed to all 152 opt-in plaintiffs); *Rosen v. Reckitt & Colman, Inc.*, No. 91

Civ. 1675, 1994 U.S. Dist. LEXIS 16511, at *11-12 (S.D. N.Y. 1994) (permitting

depositions of all 49 opt-ins); *Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1188 (E.D.

Va. 1991) (authorizing depositions of all 127 opt-ins).

All of the cases cited by Defendants can be distinguished from the instant case.  In

*Renfro*, *Coldiron*, and *Abubakar*, it is unclear where the plaintiffs were located

geographically or how class-wide discovery would burden them.  In fact, in both *Renfro*

and *Coldiron*, the courts indicated that they may have limited discovery had the plaintiffs

made specific objections rather than a blanket objection to all discovery.  *Krueger* is an

ADEA case where the court permitted written discovery of all class members (because

the written discovery was in the form of a questionnaire which reduced the burden on

plaintiffs), but only permitted 14 depositions.[6]  *Rosen* is also an ADEA case, where

plaintiffs geographic location was unclear as was the burden plaintiffs would bear

deposing all of the class members.  Additionally, with only 49 plaintiffs, the court found

that because the class was so small, the sample size (with representative discovery) would

not have been statistically significant.  In *Brooks,* the court permitted classwide

depositions because it found that the parties had not developed enough factual material

for it to determine whether the plaintiffs were similarly situated under the FLSA.

Plaintiffs also cite multiple cases which support their position.  *See, e.g., Bradford*

*v. Bed Bath & Beyond*, 184 F. Supp.2d 1342, 1344 (N.D. Ga. 2002) (limiting the

defendant to discovery from 25 plaintiffs, including the named-plaintiffs and six other

opt-ins chosen by defendant in a class of over 300 department managers employed at 24

different stores in 11 states); *In Re: Am. Family Mut. Insur. Co. Overtime Pay Litig.*, No.

06cv17430-MDL Docket No. 1743, Order Adopting and Affirming Magistrate Judge's

Order, (D. Colo. Jan. 30, 2009), 2009 U.S. Dist. LEXIS 39383, at *8 (D. Colo. Apr. 27,

2009) (approving representative discovery, permitting 35 sets of written discovery and 24

depositions in a class involving 124 opt-in plaintiffs and four named-plaintiffs); *Cranney*

---

[6]  Although the enforcement mechanism of a collective action may be the same for FLSA and ADEA (Age Discrimination in Employment Act) cases, the underlying allegations in ADEA claims require a showing of intent or motive -- that age was the "but for" cause of the challenged adverse action.  ADEA cases commonly rely on direct evidence such as statements of bias or anecdotal evidence to show discriminatory motive even in cases involving a large class of plaintiffs.  FLSA violations, on the other hand, typically involve the failure to pay minimum wage or overtime due to improper policies or practices which need not have any connection to the protected status of the employee or the intent of the employer.

*v. Carriage Servs, Inc*., No. 2:07cv1587, 2008 U.S. Dist. LEXIS 113606 (D. Nev. June 16, 2008) (in a class of 300, limiting discovery to the five named plaintiffs and to 10% of the relevant combination of workers and work sites for opt-in plaintiffs); *Belcher v. Shoney's Inc*., 30 F.Supp.2d 1010 (M.D. Tenn. 1998) (in a class of 100, approving representative discovery even though the store managers were scattered among 20 states and 350 stores).

Accordingly, there are two lines of cases regarding individualized discovery in opt-in class actions. One holds that individualized discovery is not appropriate in a Rule 23 class action and, by analogy, inappropriate in a Section 216(b) class action. Other cases permit individualized discovery of opt-in plaintiffs. It is in this Court's discretion to determine what line of cases is most applicable to the specific facts of the instant case.

### C. Defending Against Plaintiffs' Claims Without Discovery From All Plaintiffs

Defendants claim that the viability of Plaintiffs' overtime and minimum wage claims depend entirely on how many hours they each worked during any given week, and, therefore, each Plaintiff must prove that s/he worked more than 40 hours in any given week in order to establish liability for that week. Defendants maintain that such a finding requires an individualized inquiry of each Plaintiff, and that limiting discovery to a subset of Plaintiffs will not provide Defendants the information they need to defend against all of the claims.

Conversely, Plaintiffs claim that representative discovery is appropriate because there is a common theory of liability. Plaintiffs claim that all of the repossession agents were treated as independent contractors and that many of their terms and conditions of employment were analogous at all three operating subsidiaries.[7]

The Court finds that the liability for each Plaintiff is not an individualized inquiry with proper representative discovery. The use of representative samples to determine lost wages is appropriate even where there are no records at all. For example, in *McLaughlin v. DialAmerica Mktg., Inc.*, 716 F. Supp. 812 (D. N.J. 1989), *aff'd Donovan v. DialAmerica Mktg., Inc.*, 935 F.2d 1281 (3rd Cir. 1991), the court approved damages for 350 non-testifying home workers (purported independent contractors), based on the testimony of 43 witnesses, all of whom were paid piecework for each subscriber telephone number located. There was variability among the class as to the number of pieces of work they accepted, the time they took to complete their assignments, and the

---

[7] "Procedures and Guidelines for Engagement, Reporting and Cancellation of Assignments" governed how the agents were to do their job and how they were paid. David Cowlbeck, the Chief Operating Officer for Defendant Renovo, explains that the agents received their work assignments electronically through the recovery database network ("RDN"), implemented by Renovo or the prior owners over the time period pertinent to the lawsuit. (Doc. 37, Ex. A at ¶ 8). They worked from their homes but provided updates through RDN or to Customer Service Representative who were first located in regional offices but later moved to Renovo's headquarters in Michigan. (*Id.* at ¶ 6). They were paid a standardized fee for a recovery and a lease fee was deducted for those agents leasing Renovo's trucks and those trucks were to be used only for Renovo work. (*Id.* at ¶¶ 7, 13). Nearly all of the Plaintiff class leased vehicles and were paid in this manner. Accordingly, Plaintiffs argue that there were not significant differences in employment conditions. Defendants dispute these contentions, claiming that each subsidiary operated differently.

fact that the employer did not keep track of hours worked. Nevertheless, representative testimony of the time required to process cards and work habits enabled the court to make findings as to the non-testifying witnesses and to determine hours worked as a matter of "just and reasonable inference." *Id*. at 825 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). *See also McLaughlin v. Ho Fat Seto,* 850 F.2d 586, 589 (9th Cir. 1988) *cert. denied*, 488 U.S. 1040 (1989) (five garment workers testified about unreported work performed on Saturdays and before and after scheduled work hours -- their testimony established a *prima facie* case that the 23 non-testifying employees worked unreported hours).

After an employee has proved that he or she has performed work for which lesser compensation was received than provided by law, the fact of damage is certain. The uncertainty arises in the determination of the precise amount of damages sustained due to the statutory violation by the employer. *Anderson*, 328 U.S. at 688. In that case, "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." *Id*. (citing *Story Parchment Co. v. Paterson Co*., 282 U.S. 555, 563 (1931)). "It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages." *Id*. (citing *Eastman Kodak Co. v. S. Photo Co*., 273 U.S. 359, 377-79 (1927); *Palmer v. Connecticut R. Co*., 311 U.S. 544, 560-61 (1941)).

It is not imperative that every employee testify in order to make out a *prima facie* case of the number of hours worked as a matter of "just and reasonable inference," and the fact that several employees do not testify does not vitiate their claim. *Brock v. Norman's Country Mkt., Inc.*, 835 F.2d 823, 828 (11th Cir. 1988) (citing *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d at 472).

### D. Whether Plaintiffs Classification As Independent Contractors Requires Individualized Discovery

One of the factors for determining whether someone is an independent contractor, as opposed to an employee, is the extent of the defendant's control over the work of the plaintiff. *Lilley v. BTM Corp.*, 958 F.2d 746, 750 (6th Cir. 1992). Defendants argue that in the instant case, Plaintiffs worked for different subsidiaries, at different times, in different areas of the country, under different supervisors. (Doc. 37, Ex. A at ¶¶ 4, 7). Because the plaintiffs reported to different company agents, and because they will apparently rely on their interactions with company agents to support their contention that they were not independent contractors, Defendants allege that they need to conduct discovery regarding each Plaintiff's interaction in order to defend their position that the employees were independent contractors.

The use of representative proof on the issue of independent contractor status was approved in a summary judgment proceeding in *Wilson v. Guardian Angel Nursing, Inc.*, No. 3:07cv069, 2008 U.S. Dist. LEXIS 92250 (M.D. Tenn. Nov. 12, 2008)*,* involving private duty LPNs. Due to the unique circumstances of this case, summary judgment on

-12-

the independent contractor issue was granted before the case was conditionally certified.

Applying the economic realities test, the court found that the named-plaintiff and the 72

LPN's who had filed consents to that point, were misclassified and entitled to overtime.

Defendant sought reconsideration and argued that the court was required to perform an

individualized analysis of the named-plaintiff and each opt-in before reaching a

conclusion as to whether she was an employee or an independent contractor. The court

rejected the proposition that the determination of employee status must always be made

by reference to facts particular to each individual plaintiff. Such an unnecessarily

laborious rule would frustrate the purposes of Section 216 by making FLSA collective

actions "massively inefficient, cumbersome and perhaps unworkable in practice." *Id.* at

17-18. Ultimately, the court held that further discovery of the class was unnecessary for

the twin purposes of FLSA collective actions, the first -- reducing plaintiffs' expenditures

and facilitating plaintiffs' claims through consolidation of resources and second -- the

efficient resolution of common claims. *Id. at 21-22* (*citing Hoffman-La Roche v.*

*Sperling*, 493 U.S. 165, 170 (1989)).

       **E.**      **Whether Individualized Discovery Is Required**
                **For A Decertification Motion**

       Defendants argue that individualized discovery is necessary for their motion for

decertification because the entire purpose of the second stage of the decertification

procedure is for the Court to assess the "disparate factual and employment settings of

individual class members" in order to determine if certification is in fact appropriate.

*Murton v. Measurecomp*, No. 07cv3127, 2008 U.S. Dist. LEXIS 108060, at *12 (N.D. Ohio June 9, 2008).  *See, e.g., Coldiron*, 2004 U.S. Dist. LEXIS 23610 at 6 (ordering 306 opt-in plaintiffs to respond to individualized written discovery where defendant's intention to move to decertify the class alone was sufficient to warrant individualized discovery); *Abubaker*, 2008 U.S. Dist. LEXIS 17456 (approving individualized written discovery of 160 plaintiffs in light of defendant's intent to seek decertification and the fact that plaintiffs had different jobs with varying responsibilities and their pre and post-shift activities varied considerably).[8]

However, Plaintiffs cite cases in this Circuit where the defendants' intent to move for decertification and differences among the plaintiff class did not compel individualized proof or discovery.

*Abubaker* is comparable to *Crawford v. Lexington-Fayette Urban Co. Govt.*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 56089 (E.D. Ky. July 22, 2008), in that both involved employees of the correctional department.  Plaintiffs in *Abubaker* sought pay for pre and post shift activities and overtime and in *Crawford* sought pay for meal breaks not taken.  In *Crawford*, the court found collective treatment was warranted because there was a common plan or scheme even though the plaintiffs were under different commanders and worked different shifts and the meal break interruptions varied from plaintiff to plaintiff and by supervisor.  "Even at the decertification stage, similarly

---

[8] While these cases permitted classwide written discovery, they did not permit classwide depositions.

-14-

situated does not mean identically situated." *Id*. at 17 (citing *Wilks v. Pep Boys*, No. 3:02-0837, 2006 U.S. Dist. LEXIS 6937, at *3 (M.D. Tenn. 2006)).

In *O'Brien v. Ed Donnelly Enter., Inc.,* 575 F.3d 567 (6th Cir. 2009), the Sixth Circuit discussed at some length the inquiry in a decertification proceeding. The Circuit Court confirmed decertification of the class, but faulted the District Court for citing as a reason that "individualized issues predominated," a criterion applied in determining class certification under Rule 23. The Circuit Court found that this is a more stringent standard than statutorily required in a FLSA proceeding. *Id*. at 584-85. Plaintiffs are similarly situated when they suffer from a single policy and proof of that policy or conduct in conformity with that policy proves a violation as to all the plaintiffs. *Id.* Plaintiffs may be similarly situated where their claims are unified by common theories even if the proofs of these theories are inevitably individualized and distinct. *Id*. at 585.

In the instant case, there is arguably a common policy at issue, the classification of the agents as independent contractors. The proof of misclassification and conduct in conformity with that policy may prove the violation as to all Plaintiffs. Although the damages will differ, case law represents that such damages can be proven by representative testimony.

### F.    Constitutional Due Process Rights

Defendants maintain that if only representative discovery is allowed, they may be found liable for damages to individual Plaintiffs against whom they may have had viable,

yet factually undeveloped defenses, which would deprive Defendants of their Fifth Amendment right to due process.

The Court finds that the use of representative discovery does not violate due process and is proper where it facilitates the orderly proceeding of a collective action. *Belcher*, 30 F.Supp.2d at 1024-25. *See also Thompson v. Bruister & Assoc., Inc.*, Case No. 3-07-412, Order ( M.D. Tenn Oct. 26, 2009) (holding that a discovery order limiting discovery to representative plaintiffs did not violate defendant's due process rights because the number of plaintiffs chosen to participate in full discovery was an initial number and that the defendants could request further discovery if they could establish that it was necessary).

Defendants have legitimate interests in obtaining sufficient discovery to support their defenses, but these rights must be balanced against other important policy considerations, including imposing such burdens on the class as to make collective actions impractical.[9]

## IV.    CONCLUSION

At this stage in the litigation, it is unclear to the Court whether, like in *McLaughlin*, 716 F.Supp. 812 (*see* discussion *supra* at Section III.C), Plaintiffs will successfully demonstrate uniform patterns of practice among the repossession agents.

---

[9]  *Adkins v. Mid-American Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992) ("Individualized discovery is inconsistent with the class action device."); *McGrath v. City of Philadelphia*, 127 Lab. Cas. (CCH) P33, 060 (E.D. Pa. 1994) (Individualized discovery on opt-in class members serves only to "obfuscate the issues and drastically enhance the costs of ligitation. Such a result cannot be countenanced.").

However, in the spirit of collective actions, representative discovery is appropriate.  The Court finds that this approach is superior given the alleged existence of company-wide policies, the size of the class, the burdensome nature of full discovery upon 115 Plaintiffs in 20 different states, and the potentially small amount of each individual claim.  *See Gutierrez v. Kovacevish*, No. Civ-F-04-5515, 2004 U.S. Dist. LEXIS 29476, at *9 (E.D. Cal. Dec. 1, 2004).

Although the class in *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354 (S.D. Ohio 2006), consisted of a significantly larger class (1500) than the one before this Court, the judge's reasoning in that case is still applicable.  Individualized discovery undermines the purpose and utility of collection actions and therefore limiting discovery to a statistically significant representative sampling will both reduce the burden imposed on Plaintiffs and afford Defendants a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses.

However, the Court does recognize differences among Plaintiffs.  While some Plaintiffs worked for a significant period of time (*see, e.g.*, Doc. 182 at 2), others worked for short periods (*see, e.g., Id.* at 7).  Plaintiffs also worked for different subsidiaries under different supervisors.  Additionally, it is reasonable to surmise that the circumstances of a Plaintiff who repossessed vehicles in Kentucky could be very different from a Plaintiff who worked in Maryland.  Accordingly, the Court finds that Plaintiffs' proposed representative discovery is too limited and must be expanded in order to afford Defendants a reasonable opportunity to discover an evidentiary basis for its defenses.

Moreover, if upon completion of representative discovery it becomes clear that the Plaintiffs' circumstances are so distinct as to make representative discovery impracticable, Defendants shall be granted leave to extend the discovery period in order to expand discovery to include a larger group of Plaintiffs, or potentially the entire class.

For the reasons stated herein, the Court finds that:

1.    Defendants may serve written discovery upon the **9** named Plaintiffs and **22** additional Plaintiffs of Defendants' choice;[10]

2.    Defendants may depose **16** Plaintiffs of their choice; and

3.    Within **10 days** of the date of this order, the parties shall submit a joint proposed order establishing deadlines for discovery, decertification, and summary judgment motions.

**IT IS SO ORDERED.**

DATE:  August 17, 2010                    s/ Timothy S. Black
                                          Timothy S. Black
                                          United States District Judge

---

[10]  The record reflects that Plaintiffs repossessed vehicles in 22 different states (Illinois, North Carolina, Maryland, Indiana, Missouri, South Carolina, Alabama, West Virginia, Mississippi, Arkansas, Georgia, Kentucky, Oklahoma, Texas, Virginia, Florida, Michigan, Washington D.C., Tennessee, Ohio, Pennsylvania, and Delaware).  (Doc. 182).  It is reasonable that Defendants should be able to question Plaintiffs who repossessed vehicles in each of these states to determine whether the time it took to repossess the vehicles is significantly different – or if there were different practices in place.  The Court is aware that some Plaintiffs repossessed vehicles in multiple states; however, given the different lengths of employment and Defendant subsidiaries, the Court finds that requiring written discovery of 31 Plaintiffs is appropriate.