UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTOPHER L. GENTRUP, et al :

                                                Case No. 1:07CV430

                                   :

                 Plaintiffs,           :       Judge Timothy S. Black

vs.                                         :

RENOVO SERVICES, LLC , et al.      :

               Defendants

                                                :

## DECLARATION OF BRUCE H. MEIZLISH

Now comes Bruce H. Meizlish, who under the penalty of perjury, states as follows:

1. I am one of the attorneys for the Plaintiffs in this matter.

2. I make the statements in this Declaration based on personal knowledge.

3. This Declaration is submitted in support of the Joint Motion for Order: 1) Approving Settlement Agreement and Release of Claims; 2) Approving Notice of the Settlement Agreement; and 3) Approving Settlement of Attorneys' Fees and Costs.

### History of The Case

4. On March 1, 2007, I met with Christopher Gentrup to discuss his potential claims, including claims for overtime connected to his possible misclassification as an independent contractor by Recovery One, LLC, a subsidiary of Renovo Services, LLC. Mr. Gentrup advised that he was receiving a flat rate, which varied in amounts, for his recovery of vehicles for Recovery One. He worked long hours, but no additional compensation for hours worked over 40 per week. The facts indicated the existence of an employment relationship with Recovery One.

1

5. After my meeting with Mr. Gentrup, I spoke with a number of other repossession agents of Recovery One and determined that they had common potential claims for overtime. Renovo had two other subsidiaries, Cyber Asset Recovery, LLC and Ascension Recovery, LLC and the pay practices and working relationships appeared to be common among the subsidiaries.

6. After reviewing relevant documents and researching the applicable law, our firm prepared a Complaint which was filed against Renovo and its three subsidiaries on June 4, 2007, by Christopher Gentrup and eight other repossession agents. (Doc. #1).

7. On August 6, 2007, Defendants filed an Answer, denying liability and affirmatively contending; (1) that the repossession agents were independent contractors to whom they owed no obligation to pay overtime; (2) that they had a good belief that the repossession agents were independent contractors and liquidated damages were not appropriate; and (3) the three year limitations period was inapplicable. (Doc. #22)

8. We continued our investigation following the Complaint, speaking with additional repossession agents, some of whom filed Consent forms to join the case as Party-Plaintiffs.

9. On behalf of Plaintiffs, we filed a Motion for Conditional Certification on September 26, 2007. (Doc. #26). Defendants vigorously contested the Motion, but ultimately the Court granted conditional certification on January 24, 2008. (Doc. #58). The parties were able to agree on the terms of a Notice (Doc. 63), which was mailed to repossession agents beginning March 26, 2008. Ultimately, 108 Plaintiffs have opted into the proceedings by filing Consents, primarily in response to the Notice. Through the course of discovery, eleven Plaintiffs were dismissed for their failure to cooperate in discovery, leaving a current total of 106 Plaintiffs.

10. After the final Consent was filed pursuant to the Notice on July 31, 2008 (Doc. #164 - Deric Hosea), Defendants notified us of their intent to amend their Answer to include a defense

2

that some or all of the repossession agents were exempt from the overtime requirements of the FLSA based on the Motor Carrier Act exemption, found at 13(b)(1) of the FLSA. During the time period pertinent to the Complaint the reach of the MCA exemption was restricted by Congress to operators of heavier vehicles in the Safe Accountable Flexible Efficient Transportation Equities Act: a Legacy for Users, known as SAFETEA-LU. Since its effective date, August 10, 2005, the exemption has applied to employees who operate "commercial motor vehicles," (those weighing in excess of 10,000 pounds) and who transport goods in interstate commerce. Pursuant to a Technical Corrections Act, SAFETEA-LU does apply for an additional year if the employer can show it was unaware of the change in the exemption's coverage.

11. Defendants' Amended Answer was filed on August 4, 2008. (Doc. #165). Following a determination that most of the claims would be affected by the application of this exemption, the parties agreed to that Defendant would file a summary judgement motion based solely on the MCA defense

12. The parties had engaged in written discovery and document production in connection with the Motion for Conditional Certification, but after Defendants amended their Answer, formal and informal discovery was limited to the MCA issue. The parties were able to stipulate to the factual matters underlying the application of the exemption for most of the Plaintiffs, including the weight of vehicles and the number of completed interstate repossessions. These Agreed Stipulations were filed with the Court on September 30, 2009. (Doc. #182) Discovery was served by Defendants upon those individuals for whom stipulations could not be reached.

13. Based upon Plaintiffs' counsel's further investigation of the claims of the class, it became apparent that many of the opt-in Plaintiffs, who generally were less experienced, received so little pay during some periods of their service that it was less than the minimum

3

wage. Plaintiffs were granted permission, over Defendants objections, to add an allegation to their Complaint that Defendants failed to pay the repossession agents minimum as required by the FLSA. (Doc. 190) Unlike the overtime claim, the minimum wage claim is not subject to the Motor Carrier Act exemption.

14. Defendants ultimately did not file a separate motion on its exemption defense, and discovery proceeded on merits and damages. Defendants served additional written discovery on 32 Plaintiffs and Plaintiffs served additional written discovery on merits and damages issues. Thousands of pages of documents were exchanged. Several depositions were scheduled, but were canceled as settlement prospects improved.

### Plaintiffs' Position

15. Plaintiffs believe they will be able to establish that they were misclassified as independent contractors based on the degree of control exercised by the Defendants over their work and their economic dependence. A preview of the Plaintiffs' evidence is contained in the briefing on conditional certification, including emails directing repossession agents to work long hours and how to perform their work. Plaintiffs also believe that they will be able to successfully defend the certification of the class in any decertification proceeding based on the commonality of working conditions and pay practices. The claims of Plaintiffs are unified by a common theory of Defendants' violations.

16. Although Plaintiffs believe that they will ultimately prevail, Plaintiffs' counsel acknowledges the risks in defending the collective action and the merits. The MCA exemption poses a particularly significant risk that all, or a large number of the repossession agents, would not be able to recover overtime since most of the agents operated vehicles which could be classified as commercial motor vehicles and most made at least some out-of-state recoveries.

4

There are various tests used in determining the amount of interstate activity required for the MCA exemption to apply, but under some broad formulations, most or all of the repossession agents could be found to have engaged in interstate activities.

17. An additional risk in litigation is establishing damages of the class. Since Defendants classified the repossession agents as independent contractors, they maintained no records of their hours of work. Plaintiffs also have few records of their hours. Where records are incomplete or inaccurate, courts have permitted Plaintiffs to carry their initial burden of proving damages with a reasonable estimate of hours worked and compensation received. The burden then shifts to the employer to show the precise amount of work and the unreasonableness of the inference drawn from the employees' evidence. See e.g., *Anderson v. Mt. Clemens Pottery,* 328 U.S. 680 (1946). There is some risk to Plaintiffs in meeting their burden of establishing damages as a matter of just and reasonable inference.

## Current Status of the Case

18. Pursuant to the Court's Calender Order (Doc. #204), any decertification motion must be filed by July 15, 2011, and summary judgment motions must be filed by December 11, 2011. Since the parties have suspended discovery pending settlement negotiations, they will likely request extension of these deadlines to complete discovery should the Court decline to approve the settlement. Any trial could not occur until late 2012. Once liability is established, Plaintiffs intend to present their evidence of damages by representative proof. The trial could take several weeks, particularly if liability and damages are combined in one proceeding.

## Settlement History

19. In light of the length of time required to litigate collective actions such as this case and the risks involved in decertification and summary judgement, Plaintiffs have been motivated

5

to explore the possibility settlement. Discussions have occurred throughout this case between myself and counsel for Defendants, Joel W. Rice. In the spring of 2009, the parties agreed to participate in mediation. The mediation was held on July 1, 2009, in Chicago at the offices of Defendants' counsel, conducted by Mediator Douglas M. Werman. I and my partner, Deborah Grayson, and Lead Plaintiff Christopher Gentrup attended for Plaintiffs. Mr. Rice, Craig Annunziato, another partner with his firm, and Brian LaFratta, an associate, attended along with representatives of the Defendants, including David Cowlbeck, then Renovo's Chief Operating Officer. Although some progress was made, we were unable to reach an agreement.

20. As the discovery period concluded, Mr. Rice and I renewed our discussions, exchanging oral and written proposals which led to the current agreement.

<u>Terms of the Settlement Agreement and Release of Claims</u>

21. Pursuant to this settlement, Defendants agree to pay a fixed overall settlement amount contained in the Settlement Agreement to pay individual settlement payments to all Plaintiffs who accept the settlement by completing the Settlement Acceptance and Release. Defendants will pay the amount in eight quarterly installments, seven of an equal amount and the eighth, a slightly lesser amount. Payments to Plaintiffs will also be paid on a quarterly basis

22. The Plaintiffs will be paid according to a formula based on eligible months of service while working for Defendant Renovo and its three subsidiaries. Plaintiffs have calculated the eligible months of service and have determined there is a maximum of 1,131.5 eligible months of service. The eligible period begins, according to the Court's previous rulings on conditional certification, with the acquisition dates of Ascension Recovery and Cyber Asset Recovery (January 3, 2006 and March 7, 2006, respectively) and for Recovery One (March 26, 2005) or three years prior to the date of consent, if earlier. The eligible period ends with the month that the

parties could establish a final repossession, reflected either by the stipulations or other evidence. Since the FLSA contains a maximum three year statute of limitations for assertion of claims, no months of service are included if they occurred more than three years prior to the Plaintiff's Consent, which "commences" the action for purposes of the statute.

23. Based on the maximum eligible months of service and the overall settlement amount, there is a minimum payment of one eligible month, even if the Plaintiff worked less than one month. This is a "claims made" settlement. If the Plaintiff does not accept the settlement the amount to which that Plaintiff would be entitled will be redistributed among the Plaintiffs who do participate. Accordingly, the specific amount each Plaintiff will receive is not yet determined. Although the hours worked and pay received by individual Plaintiffs varied, trying to prepare precise calculations as to actual damages would be extremely difficult based on the lack of documentation. In these circumstances, it is the opinion of Plaintiffs' counsel, that the allocation formula is fair, reasonable and equitable.

## Reaction of the Class

24. In early May 2011, Plaintiffs' counsel sent Plaintiffs information about the potential settlement by mail and email. After describing the risks of continued litigation, Plaintiffs advised the repossession agents that the proposed settlement would be based on the formula as described above. Since individual amounts would vary according to the number of Plaintiffs who accepted the settlement, Plaintiffs were not advised of their potential recoveries. In response to our communication, I and my partner, Deborah Grayson, have spoken with approximately 20 repossession agents, none of whom have objected to the settlement. To the contrary, many were pleased that they would receive compensation and that the case would finally conclude.

### Position of Plaintiffs' Counsel on the Settlement

25. In the opinion of Plaintiffs' Counsel, this settlement is fair and reasonable. Plaintiffs' counsel believes that if this case is not settled now, it might not result in any recovery for all or part of the class, or a recovery several years from now which is less favorable than that offered by the settlement. The risks posed by the Defendants' affirmative defense of the MCA exemption effects the viability of the claims of many Plaintiffs and justifies a compromise settlement, particularly since it provides a payment for all Plaintiffs.

### Class Representative Fee

26. Included in the Settlement Agreement and Release of Claims is a modest Class Representative Fee of $2,500.00 for Lead Plaintiff Christopher Gentrup. Mr. Gentrup has provided invaluable assistance in finding witnesses and providing information to Plaintiff's counsel supporting their legal positions on matters such as the relationship of Defendants' subsidiaries and the indicia of employee status. Mr. Gentrup has given several statements in support of Plaintiffs' motions and as the lead Plaintiff, responded to four sets of written discovery. Mr. Gentrup helped counsel prepare for the mediation and at his own cost, drove to Chicago and rented a hotel room, in order to participate in the mediation.

### Settlement of Attorneys' Fees and Costs

27. Under a separate Settlement of Attorneys' Fees and Costs, the parties have agreed to pay fees and costs connected to the litigation of this matter. In the opinion of Plaintiffs' counsel the fees and costs are reasonable and justified under the standards for reviewing an award of attorney fees in the Sixth Circuit as discussed in the Joint Motion. The payment contained in the settlement is much lower than the value of the Lodestar of attorneys' fees and costs. As of June 8, 2011, I and Deborah R. Grayson have expended 1,683.5 hours in connection with this case.

Counsel estimates that an additional 40 hours will be expended in further actions contemplated by the settlement and talking to Plaintiffs about the settlement for a total of 1,723.5 hours. Both attorneys bill hours at $350.00 an hour. The value of services on an hourly basis is $603,225.00. Our paralegal, Joan Williamson, has expended 74.5 hours in connection with this case, billed at rates from $60-100, depending on the complexity of the activity, for a total paralegal expense of $6,400.00. Our costs are currently $3,082.29. The Lodestar amount is $ 612,707.29.

28. Plaintiffs counsel has maintained careful records of time expended in this case, recording increments to the .10th hour. Plaintiffs' paralegal has recorded her time under counsel's supervision for activities including setting up a class database, internet research, preparing charts of discovery materials and responses, and communicating with the class. Plaintiffs have carefully recorded all costs in this matter which have included the filing fee, mailing costs, fees payable to a bulk mailing service for the court ordered notice, expenses connected to attending the mediation in Chicago, and Plaintiffs' share of the mediator's fee.

### Background and Experience of Bruce Meizlish and Deborah R. Grayson

29. I am a member in good standing of the Bar of the State of Ohio and am admitted to practice in the United States District Court for the Southern District of Ohio; the United States Court of Appeals for the Circuit; and all local courts within the State of Ohio.

30. I am a graduate of The Ohio State University in Columbus, Ohio, where I received a BA degree in 1974. I earned my law degree in 1977 from George Washington University Law School and have been practicing for over 34 years in the area of employment law.

31. In September 1977, I became employed as a Field Attorney with the National Labor Relations Board at its Cincinnati, Ohio Regional office and was later promoted to Trial Specialist

32. In March 1987, I joined The Kroger Company as a labor relations attorney. I was

responsible for legal matters pertaining to employment and labor relations for approximately one-third of the 180,000 employees of the corporation, including wage and hour issues.

33. In June 1988, I entered the private practice of law in Cincinnati, Ohio. In March 1995, I formed the law firm of Meizlish & Grayson with Deborah Grayson. My current practice concentrates in employment law and litigation, focusing on wage and hour cases. Ms. Grayson and I have handled many FLSA cases similar to this case, some closed and others pending.

34. Our firm filed a collective and class action in *Combs v. Trugreen Limited Partnership,* Case No. 1:08cv489 (S.D. Ohio) alleging improper application of the fluctuating work week method of payment of wages in two of Trugreen's divisions. The case settled in mediation conducted by then-Magistrate Timothy S. Black. Chief Judge Susan J. Dlott gave her Final Approval of the Stipulation of Settlement and Release on September 2, 2011. (Doc. 44).

35. Our firm served as plaintiffs' counsel in *Pennington v. Frisch's Restaurants, Inc.,* Case No. 1:03cv886 (S.D. Ohio), a FLSA case involving improper deduction of meal breaks and other time worked. Following court-supervised notice, 35 employees joined the 19 filing plaintiffs. All of the individual cases were settled with the approval of Judge Dlott.

36. Our firm served as plaintiffs' counsel in *Thompson v. Walnut Brewery, Inc., dba Rockbottom Restaurants,* Case No.1:06cv-291 (S.D. Ohio), a FLSA case involving improper deduction of hours for breaks not taken. The Settlement Agreement was approved on August 24, 2008 by then-Magistrate Timothy S. Black. (Doc. 20)

37. Our firm served as plaintiffs' counsel *Hocker, et al. v. CHSHO, dba Glencare Center,* Case No. 1:07cv-536 (S.D. Ohio), another FLSA case involving improper deduction of hours for breaks not taken. Named-plaintiffs reached a settlement with defendants.

38. As for pending cases, our firm serves as plaintiffs' counsel in *Fowler, et al. v.*

*Family Dollar Stores, Inc., et al.,* an FLSA complaint alleging misclassification of store managers, initially filed in this judicial district in Case No. 1:07cv250, but later transferred to the Western District of North Carolina as part of a multi-district litigation proceeding *In Re: Family Dollar FLSA Litigation,* MDL Docket No. 3:08MD1932.

39. We also serve as plaintiffs' counsel in *Brown. v. Flexicom, LLC,* Case No. 1:09CV745, filed in this judicial district but assigned to Judge William O. Bertlesman, who has conditionally certified a unit for purposes of notice. (Doc.29)

40. Our firm currently serves as plaintiffs' counsel in FLSA collective and state class actions in *Monahan v. Smyth Automotive, Inc.,* Case No. 1:10cv048 pending before Judge Arthur S. Spiegel for approval of settlement and *Seger v. BRG Realty LLC,* Case No. 1:20cv434, in which Chief Judge. Dlott conditionally certified a unit of maintenance technicians for purposes of notice on May 25, 2011. (Doc. 15)

41. Finally, our firm represents Plaintiffs in an FLSA collective and state class action asserting misclassification of transportation brokers in *Hendricks v. Total Quality Logistics*, Case No. 1:10CV649. The notice period recently concluded after conditional certification by Judge Dlott (Doc. 44) and discovery is on going.

42. In addition to these cases, I have also handled many individual cases involving wages and overtime, including cases involving the Equal Pay Act; Ohio prevailing wage law; and Ohio wage and overtime law.

43. I am a member of the following professional organizations: The Ohio State Bar Association, the Cincinnati Bar Association, the National Employment Lawyers Association, the Ohio Employment Lawyers Association; and the Cincinnati Employment Lawyers Association.

44. I am rated "AV" by the Martindale-Hubbell Law Directory signifying that my

legal abilities are acknowledged by my peers, and that my professional ethics and conduct are above question.

45. Ms. Grayson graduated from the University of Kentucky with highest honors, in 1974 and earned her law degree in 1977 from the George Washington University Law School.

46. From 1977 until 1994, she was employed by the NLRB as a Field Attorney and later as a Trial Specialist.

47. Ms. Grayson is a member of the Bar of the State of Ohio, the Commonwealth of Kentucky, and the District of Columbia and is admitted to practice in the United States Court of Appeals for the Sixth Circuit, United States District Courts for the Southern District of Ohio and the Eastern District of Kentucky.

48. She is a member of the Kentucky Bar Association, the Cincinnati Bar Association, the National Employment Lawyers Association, the Ohio Employment Lawyers Association and the Cincinnati Employment Lawyers Association.

49. She has been voted by her peers an *Ohio Super Lawyer* in the area of Employment & Labor Law in 2009, 2010, and 2011.

## Contingency Nature of Relationship

50. Counsel entered into fee agreements with the filing Plaintiffs, which stated that legal fees would be paid on a contingency basis. Pursuant to the fee agreement, the Plaintiffs were advised that the case was one in which the Defendant might be required to pay reasonable attorney fees and authorized counsel to seek and collect such fees in addition to any relief they might be seeking for the client. The Plaintiffs were further advised that counsel would seek payment of costs from Defendants but if they were unable to obtain payment of costs from the Defendants, client would repay counsel for all costs of the case. Plaintiffs' counsel have made

significant investments of their time, as shown from the Lodestar figures, and have advanced all costs. To date, Plaintiffs have received no compensation in this case which is now pending in its fifth year.

51. Plaintiffs counsel are agreeing to take less than the Lodestar amount because of the risks of litigation and to conclude this matter in an equitable matter for the Plaintiffs who have participated in this proceeding.

Pursuant to 28 U.S.C.§ 1746, I declare under penalty of perjury that the foregoing Declaration is true and correct.

Executed on this 9th day of June, 2011

_____
Bruce H. Meizlish